IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C.

Joseph Slovinec,
   Plaintiff,
     Vs.
American University,
   Defendant

06-455 gk - Judge Kessler

RECEIVED
AUG 15 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

REQUEST FOR USE OF EXPERT MATERIALS IN PLEADINGS RATHER THAN FORMAL RULE 26 PROCEDURE: MOTIONS TO PUT JOB SEARCH LIST UNDER SEAL AND MAKE PUBLIC INTERROGATORIES TO U.S. GOVERNMENT OFFICIALS ON OR BEFORE AUGUST 27, 2006

1.    Plaintiff notes the briefing schedule calls for Rule 26 (a)(2) Disclosure of Expert Testimony by Plaintiff by September 1 and Response by Defendant by October 1: on one hand, Plaintiff prefers a more informal process of including briefings about work of foreign affairs experts in pleadings: these will include work of Gerard Powers of Notre Dame's Kroc Institute on choices of policy where invasion of Iraq was not considered a just war before March 2003; and comparison to only about five pages about Iraq and Kuwait in American University Professor Ronald Fisher's main textbook by Kriesberg who deserves an A- yet at times sound like a hawk on discussing escalation of tensions and ethnopolitical conflict, perhaps like Fisher an advocate of defense simulations. Plaintiff will also write the Association of Professional Schools of International Affairs to ask if APSIA could designate a mediator, and he intends to enclose information on U.S. Institute of Peace: both are expected to want to serve or consider including both American U. and J. Slovinec so they would not be expected to give "expert testimony" "accompanied by a written report prepared and signed by the witness." A reading of pages 9-13 of Arab League paper indicates Fisher wanted to suppress J. Slovinec's criticism of Bush for invading Iraq after the March 1, 2003 Arab League meeting refused to consider a proposal by Kuwait and United Arab Emirates for Saddam to go into exile without a trial which J. Slovinec called a "better idea than war", J. Slovinec's discussions of Iraq's right to repudiate a British defense treaty under the U.N. Charter, and topics like the Taif agreement on Lebanon and Shatt-al-Arab crisis of 1980 which Americans have neglected to research.. However, J. Slovinec is accusing American University of a severe and serious repression of his academic freedom when Dr. Ronald Fisher refused to grade his paper on Arab League, and summaries will include main themes in the paper of Hussein Hassouna's book on The League of Arab States and Regional Disputes and Mark Zacher's book on the O.A.S. and Arab League. Fisher felt a threat not to grade the paper would produce more money from J. Slovinec: this made it less attractive to foundations like the Joyce Foundation and Spencer Foundation in Chicago where every foundation and every private loan company where J. Slovinec applied refused funding for Fisher's class, and his actions led to emotionally and financially abusive practices from American U.'s other staff including refusal to give additional information on emergency loans and creation of dependency on food stamp caseworkers in a sarcastic re-enactment of past incidents of J. Slovinec's 1999 eviction after DePaul, when J. Slovinec was laid off by Medicaid caseworkers in the administration of ex-Governor George Ryan, and sufferings J. Slovinec's grandparents had in the Great Depression during the Presidency of Herbert Hoover when they admired Franklin Roosevelt; unjustified threats of arrest from campus guards for complaining about denial of access to financial aid; and after Plaintiff's financial accounts everywhere were less than $60 and down to 88 cents, Plaintiff's residency like an internal exile case in a foreign

country at the CCNV shelter for nearly a year. These were not in the spirit of Eleanor Roosevelt's support for economic and social welfare rights in the Universal Declaration of Human Rights and of the United Nations Charter which respected Iraq's independence and sovereignty. An avoidance of these circumstances for American U. students in the future should hopefully be among reforms under consideration by President Kerwin and the Trustees who should also receive J. Slovinec's complaints about an increase in conservatism in 2005-2006 when in a search for American University faculty research on Iraq, J. Slovinec could only find Dean Goodman invited a National Defense University lecturer on Iraq, Stuart Johnson on Nov. 2, 2005. In one of the items which was later torn up, J. Slovinec received a newsletter when Dean Goodman said he respected both sides in the Iraq war dispute and Bush-Kerry race, Dr. Said talked about peace, and Dr. Kerwin talked about peace protests during the Vietnam War. Therefore, J. Slovinec wants to remind American U. of the original spirit of the invitation which should cause us to work to end the suspected staff discrimination against J. Slovinec's past Illinois Democrat connections to figures, including officials, who oppose the Iraq war: this discrimination included obstacles to a search for a full-time job which never materialized and where J. Slovinec stayed on dependency on food stamps for nearly a year when the only other sensible option, a return to Chicago for an admission offer at Roosevelt University in September 2005 was not used. PLEASE ASSIGN COURT DATE FOR MOTION FRIDAY/MONDAY

2. Plaintiff wants to bring it to Judge Kessler's attention he already sent a list of places where he applied for work and he sent it to American University Interim President Cornelius Kerwin, Dean Louie Goodman, and Mr. Khalid. Putting the list in public records could cause anger among American U. students and bad publicity could damage prospects of student hires: consequences which J. Slovinec seeks to avoid. A motion to keep under seal is requested by August 27 because Plaintiff has little choice than to otherwise give the list to public court records by August 30, 2006, when CCNV says then or soon thereafter J. Slovinec must either leave CCNV or move downstairs three floors and movers and cleaners have been untrustworthy in the past: with unauthorized throwing out or stealing of items including: Dean Goodman's list of employers, the Kriesberg book, sections of papers from both American U. classes, and a Sacred Heart picture Plaintiff had: this rendered respect for Plaintiff's rights little better than a Guantanamo Bay detainee. **In these conditions, Plaintiff has reservations about rigid adherence to LCvR 5.2. since he cannot guarantee making items "available for inspection" since he lives like white trash in a poor homeless shelter and this rule seems intended for wealthy law firms with a higher degree of trust: he wants to keep items in public files.**

3. There are two reason Plaintiff would rather keep interrogatories to U.S. government officials in public files: about Oct. 5, 2005, Interim President Kerwin indicated American U. and Benjamin Ladner were under U.S. Department of Justice investigation, and Plaintiff in her interrogatories will accuse U.S. Secretary of Education Margaret Spellings of colluding with American U. to humiliate him with deliberate actions inconsistent with his reliance on Bush Administration cooperation with his American U. attendance with a January 2005 Sallie Mae deferment: on the same day as Julie Weber's court case to demand eviction, her staff member Mary Muncie declared J. Slovinec's student loans in default June 22, 2005 and prevented his borrowing even when he was on food stamps for nearly a year. Plaintiff opposes private discussions between them in the secret interrogatory process in Rule LCvR 5.2..

PROOF OF SERVICE: To: Hisham Khalid, Legal Counsel's Office, American University, 4400 Massachusetts Av., N.W., Washington, D.C. 20016
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20016    August 15, 2006  2    *Joseph Slovinec Joseph Slovinec*    *sent to (court box)*

*Note: APSIA at 225 Eggers Hall, Syracuse, NY.*
*Mr. Ladner might be on oral deposition list*