IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,
   Plaintiff,
   Vs,
American University,
   Defendant

06-455
gk (Judge Kessler)

FILING OF SUPPLEMENTAL EXHIBIT ACCORDING TO LCVR 5.2B:
REQUEST OF CONSIDERATION OF USE OF COURT SOCIAL SERVICES
OR JUDICIAL ORDER FOR SHELTER WHERE PLAINTIFF CAN KEEP
SUITCASES AND NOT MOVE OUT AT 7 A.M. EACH DAY

1. After a careful reading of the rules, Plaintiff is aware he needs to file an exhibit with emergency motion for court to take discovery filings immediately: in Local Rule 5.2b Filing of Discovery Materials With Motions and At Trial: "Any motion concerning discovery matters shall be accompanied by a copy of, or shall set forth verbatim, the relevant portion of any nonfiled discovery materials to which the motion is addressed." Plaintiff therefore files interrogatories which a computer attendant put on e-mail. Interrogatories to U.S. Secretary of Defense Rumsfeld will be identical to filings in the U.S. Supreme Court petition for writ of certiorari 06-6254 and include Plaintiff's note McNair used the identical term "barring" against Mr. Slovinec which was used as "barring" on www.myelectionanalysis.com in the U.S. Supreme Court decision *Rumsfeld v. Forum for Academic and Institutionasl Rights (FAIR)* 04-1152 of March 6, 2006 which said law schools could not bar military recruiter due to gay rights issues if they want federal funding: during Spring 2005, neither Secretary Rumsfeld nor Mr. Slovinec sought a confrontation at American U. on this issue: Plaintiff wants to know about military influences on McNair. Mr. Slovinec has favored access to campus for military recruiters since 1978. Plaintiff sent interrogatories to U.S. Secretary of Education Margaret Spellings through use of Assistant U.S. Attorney Craig Lawrence in pages 10 and 11 of above Legal Memo on Interrogatories in Case 05-5372 and he wants to avoid redundancy on American U. issues.
2. They are disorganized and CCNV might call off transfer of J. Slovinec to Franklin Shelter tomorrow afternoon, Friday, Sept. 15. If Judge Kessler can suggest use of court social services or a shelter in D.C. or northern Virginia where Plaintiff can keep suitcases and items for several weeks and not leave at 7 A.M. every day, Plaintiff would be grateful and he hopes Mr. Khalid will concur.
3. Please accept attached Notice of Removal of Most Issues of D.C. Superior Court Case SC-2006-SCI-617. J. Slovinec's future address is unknown.

SERVICE: Was done earlier in mail to: Hisham Khalid, American U. Legal Counsel, 3201 New Mexico Ave., N.W., Washington, D.C. 20001: second copy will be made available before hearings
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C., September 14, 2006

*Joseph Slovinec*

**RECEIVED**
SEP 1 4 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Joseph Slovinec,
   Plaintiff,
       Vs.                                         SC 2006-SC1-617
D.C. Dept. of Human Services            Judicial Review of Judge
Income Maintenance Administraion,     Sullivan
Defendant

NOTICE OF REMOVAL OF MOST ISSUES TO FEDERAL COURT

1. Plaintiff is pleased to report there was a SETTLEMENT of Issue 4 of April 10, 2006, "Properly Refer: Food Stamp Employment Training Issues" when Plaintiff attended Food Stamp Employment Training class at University of District of Columbia/Van Ness in July and August 2006 and a graduation ceremony tomorrow, September 15.

2. The D.C. Superior Court is only asked to retain ONE D.C. BUDGET ISSUE Issue 1 of April 10, 2006, 1. "Order Payment of $250 to Plaintiff" to reimburse for $70 for application to Johns Hopkins Master's Degree in Liberal Studies program and $180 for personal items: J. Slovinec today only has $220 in the bank.

3. Plaintiff hereby gives notice of removal of all other issues in case, where judges took no actions of judicial review since Judge Sullivan refused relief to Plaintiff on vague grounds with no written opinion, to United States District Court Case 06-455 Slovinec v. American University on EEOC age discrimination on jobs issues before U.S. District Court Judge Gladys Kessler at 333 Constitution Av., N.W., Washington, D.C. These include followup of Food Stamp Employment Training where J. Slovinec still has not received a full-time job, and American U. Has a right to learn about alternative training in the job search. Recent research Indicates J. Slovinec's complaints about delays and lack of access to cash in a no-Cash program properly belong before federal court, not D.C. court, like in *Blum v. Bacon,* 457 U.S. 132 (1982) where the U.S. Supreme Court rules New York's policy of no cash assistance in Emergency Assistance to AFDC recipients
violated Equal Protection clause of 14th Amendment to U.S. Constitution. It is Judge Kessler's decision if she wants to review tape recordings in above case.

SERVICE IN: U.S. mail to : Michael Miller, for D.C. Dept. of Human Services, 64 New York Av., N.E.
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 September 14, 2006

MSN Home | My MSN | Hotmail | Shopping | Money | People & Chat    Sign Out    Web Search: Go

 

Hotmail    Today | Mail | Calendar | Contacts

jslovinec16@hotmail.com

Reply | Reply All | Forward | Delete | Junk | Put in Folder ▼ | Print View | Save Address    Inbox

| | |
|---|---|
| From : | michael locklear <chiefmicah@yahoo.com> |
| Sent : | Friday, August 18, 2006 5:04 PM |
| To : | jslovinec16@hotmail.com |
| Subject : | Joe |



LEGAL MEMO: IN RE: IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA, WASHINGTON, D.C.
Joseph Slovinec,                                                    06-455
   Plaintiff,                                              gk (Judge Kessler)
   Vs.
American University,
   Defendant
INTERROGATORIES
1. To Brenda Harner:  Have you been aware that I, J. Slovinec, have right to prevail on lawsuit due to retaliation for filing a letter and complaint about American U. or issues like Professor Fisher's linking of references to financial aid even if you claim business reasons not to hire me?
2. To Ms. Harner:  Your lawyer Hisham Khalid is asked to tell me I still have the right to ask the U.S. Department of Labor to do a survey of ages of your employees: would you be respectful if a survey is done?
3. To Ms. Harner:  Does American University use a labor union?
4. Brenda Harner is asked to produce job descriptions and department names for every one of the jobs in the EEOC complaint, any personnel file on J. Slovinec, and any files on the barring order of J. Slovinec.
5. To Ms. Harner:  Please describe the extent to which you worked together with Dean Goodman of the School of International Service and Dean Leo Grande of the School of Public Affairs on relevant job descriptions, and I view your arguments with skepticism since my observation indicated Dean Goodman only hired one employee over 40, Will Baker,
6. To Ms. Harner, Dean Goodman, and Dean Leo Grande:  Are you aware that after President Clinton signed the 1996 Welfare Reform Act and new economic development policies including the Senn High School school-to-work apprenticeship program in Chicago with links between classes and apprenticeship assignments with social introductions to employers, this creates a situation where a trial could evaluate both the

job openings at Brenda Harner's Human Resources office and job search advising roles of Dean Goodman, Graduate Certificate in Peacebuilding Director Ronald Fisher, and Lochlann Boyle? These are linked J. Slovinec's inability to find any jobs between April 2005 and February 2006 with my first regular part-time job in March 2006, and delays of D.C. Dept. of Human Services' start of my entry into Food Stamp Employment Training classes from a requested court order in February 2006 to July 2006?

7. To Dean Goodman: What are your policies on access to campus jobs and financial aid for students both in December 2004 and now?

8. To Dean Goodman: Are you aware that in a pamphlet available at 441 4th St., N.W. city offices, the U.S. Department of Education now has work-study programs for graduates and undergraduates, and School of International Service discriminates against lower-income and middle-income students in not having it? Please comment on feelings of me, J. Slovinec, that in context of this it was not a good idea for American U. to keep me on the campus with neither financial aid nor a job; and American U. School of International Service has not done well with zero jobs for me in contrast to earlier campus jobs I had during my Master's Degree in International Affairs program at Columbia University's School of International and Public Affairs in New York City including: Autumn 1980 Iran Center, Spring 1981 American Numismatic Society (coin collecting library), and work for Columbia's Vice President for Government Relations and Community Affairs Greg Fusco as research assistant in 1981-1982: it included research on federal legislation on financial aid and international educational exchanges.

9. To Dean Goodman, Dr. Ronald Fisher, and Financial Aid Office: Please comment: It appears severely discriminatory since I, J. Slovinec, believe virtually everyone in Dr. Fisher's SIS 609 class of Spring 2005 and Summer Institute on Peacebuilding and Development was receiving or could receive financial aid and I did not. Please provide the first name (I might eventually ask for the last name) of every student in Dr. Fisher's SIS 609 class and Summer Institute on Peacebuilding and Development who received federal student loans (including from the Master's Degree in International Peace and Conflict Resolution program, tuition remission as American University employee, and tuition reimbursement from an employer where these were mentioned at Summer Institute: United Nations, Organization of American States, oil companies, CARE, United States Agency for International Development, and United Nations High Commissioner for Refugees. UNJUST ENRICHMENT

10. To Dean Leo Grande: Please review above information on Senn High School and try to remember one previous talk we had in Spring 2005: later evidence supports my contention that American University has not done enough to discuss urgent or displaced worker programs for students and ex-students with Montgomery County, Maryland, location of Park Bethesda where I resided, and D.C. Dept. of Employment Services: in comparison with Senn, it is considerably more difficult for an American U. student like me to get a job to put food on the table

when, I, J. Slovinec could not find a job with the federal civil service or elite think-tanks after a brief 90-day semester with Dr. Fisher which American U. sought to cancel after my relocation from Chicago.

11. To Bishop Schol of the Board of Trustees: The March 3, 2006 memo on Senator Grassley's concerns included the spiritual role of the United Methodist Church at American U.: I, J. Slovinec, intend to ask and get a court order to find out how many homeless shelters the United Methodist Church has in the Washington, D.C. area including at St. Luke's and a rumored shelter across the street at Metropolitan Memorial United Methodist Church and why they could not be used for evicted ex-American U. students like me: there was a lot of phony hypocrisy which was bad for my spirituality after my eviction from Park Bethesda where, even though Maryland got a large grant from FEMA for homeless shelters, the Rockville Crisis Center asked me if I was mentally ill and when I truthfully said I was not, they said homeless shelters were only for mentally ill and substance abusers after I called a man on Gude: and I was forced with no other choice than to stay at Community for Creative Nonviolence in D.C. with a large population of ex-offenders, substances abusers, and at first only 88 cents in only D.C. savings account from September to December 2005 and zero from January to March 2006: caseworkers for above populations at CCNV do not have rights skills to advise evicted American U. students on job search, especially someone with two Master's Degrees like me. What could you do to avoid future spiritual and economic poverty for American U. students like me who were turned down for private loans?

12. To Dr. Fisher: You're asked to clarify comments where in March 2005 I, J. Slovinec
Asked you for job reference and you implied you were for it and I should ask for job coaching from Lochlann Boyle; and in September 2005 when I told AU I had less than $60 in my account your office sent an insulting e-mail which tried to demand payment and then said I did not have your permission to use your name as a reference: please clarify this, and note I had no alternative than to use AU references after I left Chicago: seeking of unjust enrichment from Dad's estate. .

13. Ingrid will be asked in an oral deposition on unfair denial of access to emergency loan and on her creation of food stamp dependency issues and eviction in imitation of past hostility at DePaul.

14. Ask Lochlann Boyle if I could make names of SIS employers at March 2005 job fair public, and his perceptions on above issues: (in writing at first).

15. Dr. Fisher is asked to respond in writing on my accusation his refusal to grade
Arab League papers was done to suppress my criticisms of Bush on not consulting enough with Arab League before 2003 Iraq invasion and to suppress 1948 Iraqi riots against defense treaty with British who use similar tactics today, and my feelings he is a Republican-leaning military trainer whose perspective would not please or inform Democrats and Catholics in Illinois who are critical of Bush's Iraq policies.

16. To Dean Goodman and Dr. Fisher: I, J. Slovinec, believe a financial adjustment in my favor or a settlement is desirable because there have

been too many difficulties in job search especially with too short of a schedule between Dr. Fisher's first grade on March 17 and end of classes about April 23, 2005: this was after I was in Chicago 15 years and: I did no internship in Spring 2005, cold calling to businesses without social introductions from AU, bad lack of use of my goals in Statement of Purpose of following up on research topics of my Master's Degree in International Affairs at Columbia University including Carter Administration policies, teaching of my International Security Policy advisors Roger Hilsman and present U.S. Ambassador to Iraq Zalmay Khalilzad, and European history including my M.A. thesis at DePaul with French and Italian languages at Notre Dame: Dr. Fisher's approach was too dependent on marketing two projects on Kashmir peace talks between India and Pakistan which went well and Colombia which was a theme of groups in both classes yet Dr. Fisher did not seem to discuss viewpoints of interest to Chicago officials on the Colombia-FARC dispute: of U.S. Dept. of State, Drug Enforcement Administration which led to later indictment of FARC officials
ORAL DEPOSITIONS WILL INCLUDE THESE INDIVIDUALS IN BARRING ORDER: Mr. McNair, Maurice, Mr. Kumar, Carrie Trybulec, April Hornung, Darryl Cook, Ingrid Valentine,
Sam Berhanu: written interrogatories will not be included now, largely with difficulty in meeting August 15 deadline with pending U.S. Supreme Court appeal on refusal to order federal loans for Roosevelt University by September 1. List not final: probably Dean Goodman, Dr. Fisher
SINCE THERE IS AN INVESTIGATION BY U.S. DEPT. OF JUSTICE OF A.U., I, J .SLOVINEC INTEND TO MOTION COURT TO SEND DIRECTLY 5 INTERROGATORIES TO FEDERAL GOVERNMENT AND SENATOR GRASSLEY: The text is not ready on Secretary Spellings and her communications with anyone on barring order and if financial aid cutoff was related; Secretary Rumsfeld on whether his department felt negatively about a woman in Dr. Fisher's class (can't remember her name) who brought up accusations against him at International Criminal Court which I did not support since Congress passed October 2002 resolution, and if Defense Dept. had contact on campus who told Dr. Fisher not to grade my paper on Arab League and to end my financial aid; to U.S. Dept. of Justice on related financial mismanagement issues in Ladner case; to Senator Grassley and Senator Baucus on above Ladner investigation and financial aid reforms in March 3, 2006 memo; and to U.S. Secretary of Labor and Employment Standards Administration on if they could order age survey of employees at American University.


IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA,
WASHINGTON, D.C.
Joseph Slovinec,                                                              06-

455
   Plaintiff,                                                                gk -
Judge Kessler
   Vs.
American University,
   Defendant

REQUEST FOR USE OF EXPERT MATERIALS IN PLEADINGS RATHER THAN FORMAL RULE 26 PROCEDURE: MOTIONS TO PUT JOB SEARCH LIST UNDER SEAL AND MAKE PUBLIC INTERROGATORIES TO U.S. GOVERNMENT OFFICIALS ON OR BEFORE AUGUST 27, 2006

1. Plaintiff notes the briefing schedule calls for Rule 26 (a)(2) Disclosure of Expert Testimony by Plaintiff by September 1 and Response by Defendant by October 1: on one hand, Plaintiff prefers a more informal process of including briefings about work of foreign affairs experts in pleadings: these will include work of Gerard Powers of Notre Dame's Kroc Institute on choices of policy where invasion of Iraq was not considered a just war before March 2003; and comparison to only about five pages about Iraq and Kuwait. in American University Professor Ronald Fisher's main textbook by Kriesberg who deserves an A- yet at times sound like a hawk on discussing escalation of tensions and ethnopolitical conflict, perhaps like Fisher an advocate of defense simulations. Plaintiff will also wrote the Association of Professional Schools of International Affairs to ask if APSIA could designate a mediator, and he intends to enclose information on U.S. Institute of Peace: both are expected to want to serve or consider including both American U. and J. Slovinec so they would not be expected to give "expert testimony" "accompanied by a written report prepared and signed by the witness." A reading of attached pages 9-13 of Arab League paper indicates Fisher wanted to suppress J. Slovinec's criticism of Bush for invading Iraq after the March 1, 2003 Arab League meeting refused to consider a proposal by Kuwait and United Arab Emirates for Saddam to go into exile without a trial which J. Slovinec called a "better idea than war", J. Slovinec's discussions of Iraq's right to repudiate a British defense treaty under the U.N. Charter, and topics like the Taif agreement on Lebanon and Shatt-al-Arab crisis of 1980 which Americans have neglected to research.. However, J. Slovinec is accusing American University of a severe and serious repression of his academic freedom when Dr. Ronald Fisher refused to grade his paper on Arab League, and summaries will include main themes in the paper of Hussein Hassouna's book on The League of Arab States and Regional Disputes and Mark Zacher's book on the O.A.S. and Arab League. Fisher felt a threat not to grade the paper would produce more money from J. Slovinec: this made it less attractive to foundations like the Joyce Foundation and Spencer Foundation in Chicago where every foundation and every private loan company where J. Slovinec applied refused funding for Fisher's class, and his actions led to emotionally and financially abusive practices from American U.'s other staff including refusal to give additional information on emergency loans and creation of dependency on food stamp caseworkers in a sarcastic re-enactment of

past incidents of J. Slovinec's 1999 eviction after DePaul, when J. Slovinec was laid off by Medicaid caseworkers in the administration of ex-Governor George Ryan, and sufferings J. Slovinec's grandparents had in the Great Depression during the Presidency of Herbert Hoover when they admired Franklin Roosevelt; unjustified threats of arrest from campus guards for complaining about denial of access to financial aid; and after Plaintiff's financial accounts everywhere were less than $60 and down to 88 cents, Plaintiff's residency like an internal exile case in a foreign country at the CCNV shelter for nearly a year.  These were not in the spirit of Eleanor Roosevelt's support for economic and social welfare rights in the Universal Declaration of Human Rights and of the United Nations Charter which respected Iraq's independence and sovereignty.  An avoidance of these circumstances for American U. students in the future should hopefully be among reforms under consideration by President Kerwin and the Trustees who should also receive J. Slovinec's complaints about an increase in conservatism in 2005-2006 when in a search for American University faculty research on Iraq, J. Slovinec could only find Dean Goodman invited a National Defense University lecturer on Iraq, Stuart Johnson on Nov. 2, 2005.  In one of the items which was later torn up, J. Slovinec received a newsletter when Dean Goodman said he respected both sides in the Iraq war dispute and Bush-Kerry race, Dr. Said talked about peace, and Dr. Kerwin talked about peace protests during the Vietnam War.  Therefore, J. Slovinec wants to remind American U. of the original spirit of the invitation which should cause us to work to end the suspected staff discrimination against J. Slovinec's past Illinois Democrat connections to figures, including officials, who oppose the Iraq war: this discrimination included obstacles to a search for a full-time job which never materialized and where J. Slovinec stayed on dependency on food stamps for nearly a year when the only other sensible option, a return to Chicago for an admission offer at Roosevelt University in September 2005 was not used. PLEASE ASSIGN COURT DATE FOR MOTION FRIDAY/MONDAY

2.   Plaintiff wants to bring it to Judge Kessler's attention he already sent a list of places where he applied for work and he sent it to American University Interim President Cornelius Kerwin, Dean Louie Goodman, and Mr, Khalid.  Putting the list in public records could cause anger among American U, students and bad publicity could damage prospects of student hires: consequences which J. Slovinec seeks to avoid.  A motion to keep under seal is requested by August 27 because Plaintiff has little choice than to otherwise give the list to public court records by August 30, 2006, when CCNV says then or soon thereafter J. Slovinec must either leave CCNV or move downstairs three floors and movers and cleaners have been untrustworthy in the past: with unauthorized throwing out or stealing of items including: Dean Goodman's list of employers, the Kriesberg book, sections of papers from both American U. classes, and a Sacred Heart picture Plaintiff had: this rendered respect for Plaintiff's rights little better than a Guantanamo Bay detainee.  **In these conditions, Plaintiff has reservations about rigid adherence to LCvR 5.2. since he cannot guarantee making items "available for**

inspection" since he lives like white trash in a poor homeless shelter and this rule seems intended for .

3. There are two reason Plaintiff would rather keep interrogatories to U.S. government officials in public files: about Oct. 5, 2005, Interim President Kerwin indicated American U. and Benjamin Ladner were under U.S. Department of Justice investigation, and Plaintiff in her interrogatories will accuse U.S. Secretary of Education Margaret Spellings of colluding with American U. to humiliate him with deliberate actions inconsistent with his reliance on Bush Administration cooperation with his American U. attendance with a January 2005 Sallie Mae deferment: on the same day as Julie Weber's court case to demand eviction, her staff member Mary Muncie declared J. Slovinec's student loans in default June 22, 2005 and prevented his borrowing even when he was on food stamps for nearly a year. Plaintiff opposes private discussions between them in the secret interrogatory process in Rule LCvR 5.2..

PROOF OF SERVICE: To: Hisham Khalid, Legal Counsel's Office, American University, 4400 Massachusetts Av., N.W., Washington, D.C. 20016

Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20016  August 15, 2006 2

IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA
Joseph Slovinec,
   Plaintiff-Appellant,                                           05-5372
   Vs                                                               Chief Judge Ginsburg,.
Mary Muncie, as agent of,
Judges Tatel and Griffith
   And the U.S. Department of Education

MESSAGE TO ROOSEVELT PRESIDENT MIDDLETON AND ROOSEVELT FINANCIAL AID OFFICE ON STATUS OF CASE BEFORE APPEAL TO U.S. SUPREME COURT

     The court is asked to accept single-spaced format this message of August 18, 2006:"

"1. Dear President Middleton and Financial Aid Office,
     I am delighted Roosevelt University stated your intention in e-mail to allow me to enroll at Roosevelt University's Graduate Program in Education this autumn with a delay of one year after my desired start in September 2005. There are many unresolved issues: the U.S. Court of Appeals refused my request for a federal court order for the U.S. Department of Education to pay Roosevelt University $18,500 in federal Perkins loans for one school year; and that court also gave me until September 1, 2006 to appeal their decision in a writ of certiorari to the U.S. Supreme Court. A Supreme Court case appears inevitable and it challenges us while I carefully portray my feelings about Roosevelt University to the U.S. Supreme Court. If you can talk the office of U.S. Secretary of Education Margaret Spellings into restoring the loans before September 1, 2006, that would mean a settlement with no appeal to U.S.

[handwritten margin note: Keep 7-11 relevant to 06-455 except p.9]

Supreme Court.
2. The history of this issue began when American University Financial Aid Office, probably Michelle Silberberg, procured a federal loan deferment for me from Sallie Mae without involving me in the discussions: it might have seemed overly generous from January 10, 2005, my first day at American, until August 30, 2008, the last day of the four years I was given to complete the Graduate Certificate in Peacebuilding program at American University: I remind U.S. Assistant Attorney Craig Lawrence in Washington, D.C., Ms. Spellings' attorney, this was at the request of American U. not me. The deferment said "Stafford loans" and I assumed this meant all Stafford Loans although three were listed in fine print: (lawyers say enforcement of tough-to-read fine print is "unconscionable".) I have criticized an unfair practice where in phone calls of January 2006 U.S. Dept. of Education employees claimed a default notice on Stafford loans other than these three was mailed to me in December 2004 at the wrong address, 636 Winter, when I had a mailbox on Diversey so I could not have gotten it. It is not reasonable for American U. to procure a deferment on some Stafford Loans without including all of them: I therefore will ask the U.S. Supreme Court in the fundamental interest of justice to declare the deferment is still in effect and extend it to all loans because I have been on food stamps since August 2005 and I was unemployed from April 2005 to February 2006. On June 22, 2005, Mary Muncie wrote me my loans were in default and I contend this violated U.S. Department of Education regulations with no notices, bills, or observance of grace period after deferment. . In response to a courteous e-mail, earlier today, I inform Roosevelt, and will inform the U.S. Department of Education, that I can only use a written signature page, not an electronic one. (See p. 3) Mr. Middleton, I inform you there are two major disputes in my proposed writ of certiorari to U.S. Supreme Court: repression of my research on Arab League: your text does not include all of my points for Mr. Lawrence, yet hostility towards me from Mary Muncie of the U.S. Department of Education resulted after I wrote the May 12, 2005 letter to U.S. Secretary of Education Margaret Spellings (attached for Mr. Middleton only) with these points: A young man at Ms. Spellings said an institutional grievance was permissible when American U. would not give me a loan, I had only $1400 (and less ever since), (American U. later evicted me) and Maryland Dept. of Health and Human Services said in summer I could not use emergency shelters, complaints on no interviews for campus jobs at American U., a reason for my current EEOC lawsuit against American U. on basis of age, and a financial loss, and American U. was not forthcoming on aid for poor and needy. I view Roosevelt more benevolently and I now feel George Olson did not understand my tensions with Prof. Marianne Murphy at DePaul who never showed up to witness me with students at Roosevelt High School in a poor Chicago area, and then gave phony reasons like "rambling thoughts patterns" in a note where she would not allow me to student teach right away: DePaul later tried to demand I substitute teach. I do not have time to write Dr. Olson today and you can tell him I wrote "when I had $55,000 in the bank George Olson gave me the runaround

about registering there…Roosevelt again put me off in January 2005." Delays in talks at 3 schools were bad: my savings went to zero by Jan. 2006.

    3. When I had $1400, Mary Muncie worsened my situation with declaring my loans were in default June 22, 2005. I also belief this was linked to my criticism when American U. Professor Fisher "refused to grade my term paper on the Arab League." This is an academic freedom issue since the Arab League, like the Organization of American States, is vital to visions of Eleanor Roosevelt and Harry Truman for the United Nations like the United Nations Charter and Eleanor Roosevelt's support for the Universal Declaration of Human Rights. You can see in the 1966 Government Printing Office version of *Public Papers of the Presidents of the United States, Harry Truman* : #47, June 1, 1945 Citation: Legion of Merit to Crown Prince Abdul-Ilah, "Regent and Heir Apparent to Throne of Iraq" "By his loyal and steadfast devotion to the Allied cause, he has contributed materially to the success of the war effort of the United Nations; #38 Feb. 7, 1946, U.S. "obligation of preparing the Philippines for independence" which occurred on July 3, 1946, less than one year after V-J Day, a shorter time than the 1 year and 10 months between the U.S.-British March 2003 invasion of independent Iraq and the Jan. 30, 2005 multiparty election in Iraq and after that election, I was willing to serve in, and was not offered, several federal civil service positions during the Bush Administration, and #76, Address in Chicago on Army Day, April 6, 1946: "the Near and Middle East might become an arena of intense rivalry between outside powers…The United Nations have a right to insist that the sovereignty and integrity of the countries of the Near and Middle East must not be threatened by coercion." This indirectly supported Iraq's independence and seems to oppose coercion like the 2003 U.S.-British invasion of Iraq: Mr. Truman also implied the rights of Crown Prince Abdul-Ilah to repudiate a treaty, and Fisher seemed to want to repress this passage in my paper (also enclosed for Mr. Middleton), "There were anti-British tensions during the monarchy including a riot which caused Feisal II's regent to repudiate a British-Iraqi 1948 defense treaty in the 1949 Britannica Annual….(and also) George H.W. Bush had given Saddam 5 months to get out of Kuwait before the Jan. 15, 1991 intervention. This contrasted to the March 1, 2003 Arab League meeting when the Arab League refused to consider a pro-Bush proposal by Kuwait and United Arab Emirates for Saddam to resign and go into exile without a trial, a better idea than war." Mr. Middleton, I intend to portray Roosevelt's accomplishments positively to the U.S. Supreme Court including the Center for New Deal Studies and Institute for Metropolitan Affairs: Please tell Anne Roosevelt I will make sure to properly respect the memory of her grandmother, Eleanor Roosevelt, who inspired the United Nations Association of U.S.A. where I was Assistant Editor for a summer shortly after my Master's Degree in International Affairs at Columbia U., Franklin D. Roosevelt's school.. Please do anything you would like to ease the dispute: these include scholarships, assistantships, new funding, and a free room I need without a loan.

---------------------------------------------------------------------------

TO: U.S. DEPARTMENT OF EDUCATION (FAFSA) 2006-2007
FROM: JOSEPH SLOVINEC    The FAFSA was filled out according to Roosevelt University policies since Roosevelt indicated August 16, 2006, I am still welcome to attend Roosevelt U. this autumn.  I am signing that all information is truthful and accurate, and there was no way I could sign that exact text of your electronic form without these amendments:
REVISION OF: "2. are not in default on a federal student loan or have made satisfactory arrangements to repay it." TO JOSEPH SLOVINEC'S TEXT; "In a court case, I maintain I received a legitimate deferment for Stafford Loans from Sallie Mae in January 2005 for 2005-2008 and Mary Muncie improperly or erroneously entered certain Stafford Loans were in default on June 22, 2005 during the deferment period which contradicts department regulations.  I have been on food stamps since August 2005 and am therefore eligible for a deferment since then: I have only earned less than $1000 and I was unable to make repayment arrangements."
REVISION OF "4. will notify your school if you default on a federal student loan" to J. SLOVINEC: "Roosevelt has been properly notified of the above dispute on effects of the deferment and Ms. Muncie's claims." NOTE: Roosevelt University's Financial Aid form states all information must be truthful so above amendment satisfies those concerns.  Roosevelt's Financial Aid form also states: "detained students are not eligible for financial assistance while in a penal institution". I, Joseph Slovinec, observe  I am law-abiding and never was in prison or a penal institution: after Judge Kessler's ruling last August, 2005, refused me, J. Slovinec, loans for Roosevelt, I, J. Slovinec have resided in a living facility/homeless shelter, the Community for Creative Nonviolence, which J. Slovinec has compared to a prison without employment programs, and where the D.C. community was unreceptive to his past 15 years in Chicago, Illinois and one semester at American University where I never violated any AU regulation.
PROOF OF SERVICE: To:  Assistant U.S. Attorney Craig Lawrence, 501 3rd St., N.W., Washington, D.C. 20001  (Mailing to Roosevelt U. already happened)
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001  August 21, 2006

-----

SOMEWHAT PRIVATE NOTE TO MR. LAWRENCE (NOT SENT TO ROOSEVELT U.)
Mr. Lawrence, I wanted to ask if you could voluntarily forward these questions or interrogatories to Secretary Spellings for this case or writ of certiorari to U.S. Supreme Court and a related case according to Colorado River ruling, Slovinec v. American University, 06-455 before Judge Kessler: This is in Ms. Spellings' interest and easier than my proposed motion before August 27 to file interrogatories to Secretary Spellings in public files because I oppose confidential talks between her

and attorneys who probably prepare Benjamin Ladner's defense in the U.S. Department of Justice investigation: Please ask her if she understands why I believe it was unfair for American U. Public Safety Chief Michael McNair to order me not to visit campus in apparent retaliation for distributing the May 12, 2005, letter to her to several university offices where McNair misleadingly described it as "disruptive activity" like a demonstration or argument, which was not my intention; please ask her to disclose all communications between U.S. Dept. of Education and American U. staff about me between the January 2005 loan deferment of Sallie Mae; during summer and June 22, where Mary Muncie spitefully wrote my loans were in default on the same day as a court hearing where AU's Julie Weber tried to demand rent payment when I had only $60 in the account; and my viewpoint my research on Pakistan and Colombia at AU was legitimate and bipartisan, and I did not deserve a funding cutoff like a drug dealer, criminal, or sympathizer with terrorism. Thank you.

---

Talk is cheap. Use Yahoo! Messenger to make PC-to-Phone calls. Great rates starting at 1¢/min.

Inbox

**Get the latest updates from MSN**

**MSN Home** | My MSN | Hotmail | Search | Shopping | Money | People & Chat

© 2006 Microsoft  TERMS OF USE  Advertise  TRUSTe Approved Privacy Statement  GetNetWise  Anti-Spam Policy

APPENDIX A
SUPPLEMENTAL
EXHIBIT

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Joseph Slovinec,
   Plaintiff,
      Vs.                                        SC 2006-SC1-617
D.C. Dept. of Human Services            Judicial Review of Judge
Income Maintenance Administraion ,   Sullivan
Defendant

NOTICE OF REMOVAL OF MOST ISSUES TO FEDERAL COURT

1. Plaintiff is pleased to report there was a SETTLEMENT of Issue 4 of April 10, 2006, "Properly Refer: Food Stamp Employment Training Issues" when Plaintiff attended Food Stamp Employment Training class at University of District of Columbia/Van Ness in July and August 2006 and a graduation ceremony tomorrow, September 15.

2. The D.C. Superior Court is only asked to retain ONE D.C. BUDGET ISSUE Issue 1 of April 10, 2006, 1. "Order Payment of $250 to Plaintiff" to reimburse for $70 for application to Johns Hopkins Master's Degree in Liberal Studies program and $180 for personal items: J. Slovinec today only has $220 in the bank.

3. Plaintiff hereby gives notice of removal of all other issues in case, where judges took no actions of judicial review since Judge Sullivan refused relief to Plaintiff on vague grounds with no written opinion, to United States District Court Case 06-455 Slovinec v. American University on EEOC age discrimination on jobs issues before U.S. District Court Judge Gladys Kessler at 333 Constitution Av., N.W., Washington, D.C. These include followup of Food Stamp Employment Training where J. Slovinec still has not received a full-time job, and American U. Has a right to learn about alternative training in the job search. Recent research Indicates J. Slovinec's complaints about delays and lack of access to cash in a no-Cash program properly belong before federal court, not D.C. court, like in *Blum v. Bacon,* 457 U.S. 132 (1982) where the U.S. Supreme Court rules New York's policy of no cash assistance in Emergency Assistance to AFDC recipients

violated Equal Protection clause of 14th Amendment to U.S. Constitution. It is Judge Kessler's decision if she wants to review tape recordings in above case.

SERVICE IN: U.S. mail to : Michael Miller, for D.C. Dept. of Human Services, 64 New York Av., N.E.
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 September 14, 2006

*Joseph Slovinec* [signature]