## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
JOSEPH SLOVINEC,                        )
                                        )
                 **Plaintiff**          )        **Charge No. 06-CV-455(GK)**
          **-v-**                       )
                                        )
AMERICAN UNIVERSITY,                    )
                                        )
                 **Defendant**          )
                                        )
_____)


## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff, Joseph Slovinec, brought this lawsuit against American University ("University") on March 10, 2006.  Slovinec alleges that the University subjected him to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").  Slovinec's lawsuit is based entirely on his assertion that the University failed to hire him for various positions for which he applied.

<u>Background</u>

1. On November 23, 2004, Joseph Slovinec was admitted to American University's School of International Service Graduate Certificate Program in Peacebuilding and Development.  He accepted the offer of admission.

2. In January 2005, Slovinec enrolled and began taking two academic classes at American University.   He did not pay his tuition and educational expenses. *See* Def. Exhibit 1.

3.    On February 28, 2005, Slovinec contracted with the University to rent a University apartment located in Bethesda, Maryland.  He subsequently resided in the apartment but did not pay rent. *See* Def. Exhibit 2.

4.    In Spring 2005, Slovinec also sought admission to the School of International Services Master's Program.  Slovinec's application was denied on May 6, 2005 due to the highly competitive nature of the program. *See* Def. Exhibit 3.

5.    As a result of Slovinec's failure to satisfy his tuition obligations, the University placed a financial "hold" on Slovinec's account on April 16, 2005, which caused his courses in the certificate program to be dropped.

6.    On May 15, 2005, Slovinec's lease expired.  Because he failed to pay rent and refused to vacate the premises, the University initiated court proceedings in Montgomery County District Court to re-take possession of the apartment. *See* Def. Exhibit 4. The University received the final warrant of restitution in June 2005 and Slovinec was removed from the premises by the Montgomery County Sheriff's Office thereafter.  *See* Def. Exhibit 5.

7.    During this same period, Slovinec visited various University offices to deliver unsolicited requests, demands, warnings or information.  One particularly troubling incident occurred in April 2005, when Slovinec disrupted a meeting of the University President's Cabinet to warn the President that he was in danger of welfare and bankruptcy.

8.    On April 19, 2005, Slovinec sent University President Benjamin Ladner a two-page memorandum, in which he stated:  "… please don't overreact: AU

is not accused of discrimination, but I can't get work anyplace except with an

AU reference or remote chance of Il. State job *(sic)*."  *See* Def. Exhibit 6.

9.     On May 17, 2005, the University barred Slovinec from its campus due to his

erratic behavior.  *See* Def. Exhibit 7.

Slovinec's Job Applications

10.    Between January 19, 2005 and April 25, 2005, Slovinec submitted resumes

for 18 job openings in 12 different University departments.  *See* Def. Exhibit

8.  Although employment applications are processed through the University's

Office of Human Resources, individual University departments determine

which applicants to interview and to select for employment, and Slovinec's

resumes therefore were forwarded to the relevant departments for

consideration.  After reviewing his resume, each relevant department

independently chose not to interview or hire Slovinec for the non-

discriminatory reasons set forth in the University's memorandum in support of

its motion for summary judgment and in detailed supporting Affidavits

executed by each of the University officials responsible for each search

associated with a position for which Slovinec applied. *See* Def. Exhibits 9-26.

11.    Slovinec applied for the following jobs[1]:

- Communications Specialist (#1402) (Dept. of Safety & Security)
  *See* Def. Exhibit 9.

- Assoc. Director, Ctr. for Democracy,(# 4299) (International Affairs)
  *See* Def. Exhibit 10.

---

[1] Exhibits 9-26 include position descriptions for each respective job at issue, the resume of the applicant hired (except in a few cases where the position ultimately was not filled), and a corresponding affidavit explaining the search process and, where applicable, describing the University's reasons for selecting the successful candidate.

- Staff Assistant (#4490) (International Affairs)
  *See* Def. Exhibit 11.

- Producer ( #5396) (WAMU 88.5)
  *See* Def. Exhibit 12.

- Administrative Assistant (#1717) (School of Communication)
  *See* Def. Exhibit 13.

- Document & Imaging Specialist (#1895) (Enrollment Services)
  *See* Def. Exhibit 14.

- Program Coordinator (# 4928) (School of Public Affairs)
  *See* Def. Exhibit 15.

- Grant & Contract Manager (#3617) (Office of Sponsored Programs)
  *See* Def. Exhibit 16.

- Research Assistant (# 2875) (School of Public Affairs)
  *See* Def. Exhibit 17.

- Administrative Assistant (# 4041) (Washington Semester Program)
  *See* Def. Exhibit 18.

- Leader Researcher (# 5412) (School of Education)
  *See* Def. Exhibit 19.

- Technology Specialist (# 5422) (School of Education)
  *See* Def. Exhibit 20.

- Academic Advisor (#1058) (School of International Services)
  *See* Def. Exhibit 21.

- Customer Relations Representative (# 1877) (Enrollment Services)
  *See* Def. Exhibit 22.

- Administrative Assistant (# 3673) (School of Public Affairs)
  *See* Def. Exhibit 23.

- Program Coordinator (#5473) (GLBTA Resource Center)
  *See* Def. Exhibit 24.

- Project Coordinator (# 5470) (Center for Democracy & Elections)
  *See* Def. Exhibit 25.

- Graduate Advising Assistant (# 1713) (School of International Services) *See* Def. Exhibit 26.

12.    Slovinec's resume states as follows at the very top under "*Objectives*":

"Search includes new entry level positions in writing, editing, education

communications, public administration business, or real estate development."

*See* Def. Exhibit 27.

13.    Slovinec's resume also states as follows under "*Highlights and*

*Qualifications*": "research, writing, and editing in history, international

affairs, and public relations. Public administration managerial skills including

auditing and verification of eligibility for Medicaid." *Id.*

14.    Under "*Education*", Slovinec's resume lists a Master of Arts in History from

DePaul; a Master's degree in International Affairs from Columbia University;

and a Bachelors degree from Notre Dame.  *Id.*

15.    Slovinec received no interviews or job offers in connection with the 18

positions listed above.  In each case, the decision not to interview or hire

Slovinec for a particular position was made by the University official

responsible for considering applications for the vacancy at issue. *See* Exhibits

9-26.

Respectfully submitted,

AMERICAN UNIVERSITY


_____/S/_____

Hisham Khalid
D.C. Bar No. 445494
Associate General Counsel
Office of General Counsel
4400 Massachusetts Avenue, NW
Washington, DC 20016-8165
(202) 885-3285

Attorney for Defendant

Dated:  December 1, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
                                                  )
JOSEPH SLOVINEC,                                  )
                                                  )
                          **Plaintiff**           )          **Charge No. 06-CV-455(GK)**
              **-v-**                             )
                                                  )
AMERICAN UNIVERSITY,                              )
                                                  )
                          **Defendant**           )
                                                  )
_____)

**MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**I.      INTRODUCTION**

         In his Complaint, Slovinec vaguely and broadly claims that the University

discriminated against him because it did not afford him an interview or offer him

employment.  This allegation is belied by Slovinec's prior admission that he did not

believe his failure to secure employment at the University resulted from discrimination.[2]

More fundamentally, other than his own speculation, Slovinec provides _no_ evidence that

age played any role in the various decisions not to offer him employment.  When all the

irrelevant material is pruned from his Complaint, all that remains is Slovinec's self-

serving allegation that he was qualified for the positions to which he applied, and

therefore was the victim of unlawful discrimination.  Slovinec thus cannot reasonably

dispute any of the key facts set forth in the affidavits submitted by the relevant hiring

_____

[2] On April 19, 2005, Plaintiff stated in a memorandum to the University President that he should "check the status of about 15 AU jobs I applied for: please don't overreact: AU is not accused of discrimination, but I can't get work anyplace except with an AU reference or remote chance of Il. State job."  _See_ Def. at Exhibit 6 at Point 3 (emphasis added).

officials concerning their legitimate non-discriminatory reasons for not selecting him for employment.  To state a cognizable claim, Slovinec <u>must</u> proffer evidence that the reasons given by these individuals were "false" and were made up to mask unlawful discrimination.  However, Slovinec utterly fails to show how the University's reasons for not selecting him could rationally be deemed a *pretext* for unlawful discrimination. *See EEOC v. TWA*, 544 F. Supp. 1187, 1219 (S.D.N.Y. 1982) (In a discrimination lawsuit, "with respect to proof of the claimant's qualifications either to fill the position sought, to continue in his present position, . . . the testimony of the employee [her]self carries little weight" and the "most probative evidence of qualifications comes from the decision-maker . . . .").

Specifically, Slovinec's inability to show how he is qualified for the positions he sought is fatal to his claim.  Even assuming *arguendo* he could make such a showing for a few of the positions, his inability to show how his qualifications were *significantly* better than the selected candidate eviscerates his allegation that discrimination played any role in the selection decisions. *See Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284 (D.C. Cir. 1998) (en banc) (when confronted solely with qualifications evidence, a factfinder may infer pretext if "a reasonable employer would have found the plaintiff to be significantly better qualified for the job").  Finally, Slovinec cannot refute the legitimate non-discriminatory reasons proffered by the relevant hiring officials that the "*stated objectives" Slovinec listed on his resume* simply do not match the jobs at issue and, therefore, his application would not have been considered further.  In the absence of any evidentiary basis for his claim, Slovinec's assertion that he should have been hired for one of the positions at issue flies in the face of controlling precedent, which counsels that courts must "respect the employer's decision to choose among qualified candidates."  *See*

*Fischbach v. D.C. Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Stewart v. Ashcroft*, 352 F.3d. 422, 430 (D.C. Cir. 2003) (The court's role is not to reexamine promotion decisions when an employer is faced with a difficult decision between two qualified candidates, especially when no other evidence suggests a discrimination played a part in the decision); *See also Barbour v. Browner*, 181 F.3d. 1342, 1346 (D.C. Cir. 1999)(noting that the court has consistently declined to serve as a "super-personnel department that reexamines an entity's business decisions).

## II.  LEGAL STANDARD

In ADEA cases, a plaintiff may meet his burden of proof by offering either direct evidence of discrimination or by proving disparate treatment through indirect evidence. *See Douglas Corp. v. Green*, 411 U.S. 792 (1973).   If a plaintiff is able to make the *prima facie* showing, then the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the employment action.  *McDonnell Douglas* at 802.  After the employer satisfies this minimal burden, the plaintiff must present concrete evidence that the employer's reasons are false and are a pretext for unlawful discrimination.  *See Arthur Young & Company*, 631 A.2d at 360; *United Planning Organization v. D.C. Comm'n on Human Rights*, 530 A.2d 674, 677 n. 3 (D.C. 1987). While the *McDonnell Douglas* approach is often called a "burden shifting" method of proof, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*   If the Defendant offers a non-discriminatory explanation for its actions, the presumption of discrimination "simply drops out of the picture."  *Burke v. Gould*, 286 F.3d. 513, 520 (D.C. Cir. 2002) (quoting *St. Mary Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Thus, to survive summary judgment, Slovinec must establish that a reasonably jury could conclude from all the evidence that the employment decisions about which he complains

were made for a discriminatory reason. *SeeLatham v. Snow*, 336 F.3d. 1085 (D.C. Cir. 2003).

## III.    ARGUMENT

Slovinec's claim rests exclusively on the allegation that he was qualified for 18 American University job vacancies to which he applied in Spring 2005. In support of his claim, he relies on his two Master's degrees and his clerical experience. He also alleges that the age and credentials of the individuals ultimately hired into the positions at issue is evidence of discrimination.

Slovinec's claim fails as a matter of law for multiple reasons. <u>First</u>, it fails because he cannot establish a *prima facie* case. The elements of a *prima facie* case of age discrimination are well established: Slovinec must proffer concrete evidence that: (1) he is a member of a protected class; (2) he applied and was *qualified* for the job; (3) in spite of the qualifications, he was rejected; (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. *See Carter v. George Washington University*, 387 F.3d 872 (D.C. 2004). Slovinec utterly fails to establish a *prima facie* case under this standard because, with respect to the vast majority of the 18 positions to which he applied, no rational trier of fact could conclude that he was qualified for the job.

<u>Second</u>, even assuming *arguendo* that Slovinec could make out a prima facie case for a handful of the positions at issue, his proof is insufficient as a matter of law to merit trial on the ultimate issue presented: whether the University discriminated against Slovinec because of age. *Id.* As reflected in the extensive evidence attached to this memorandum and discussed *infra*, the University clearly has demonstrated legitimate

non-discriminatory reasons for the personnel decisions about which Slovinec complains.[3]

Given these legitimate reasons for Defendant's actions, Slovinec must prove "both that

the reasons [given by Defendant] are false, and that discrimination was the real reason" in

order to prevail on his discrimination claim. *See Arthur Young & Company*, 631 A.2d at

360; *United Planning Organization v. D.C. Comm'n on Human Rights*, 530 A.2d 674,

677 n. 3 (D.C. 1987)   Slovinec simply has no such evidence, and his subjective belief

that he was qualified for all 18 positions is irrelevant as a matter of law and does not

create a material issue of fact. *See Benn v. Unisys Corp.*, 176 F.R.D.2, 9 (D.D.C 1997)

("[t]he Court cannot second guess an employer's personnel decision absent demonstrably

discriminatory motive") (quoting *Fischbach v. D.C. Dept of Corrs.*, 86 F.3d 1180, 1183

(D.C. 1996)); *Kephard v. Inst. of Gas Tech.*, 630 F.2d. 1217, 1223 (7th Cir. 1980)

("[p]laintiff does not raise a material fact . . . merely by challenging the judgment of

superiors.").

> A.    Slovinec Is Not Qualified For Any of The Positions at Issue, And, In Any
>        Event, He Cannot Refute Defendant's Legitimate Non-Discriminatory
>        Reasons.

*Communication Specialist*

The Communication Specialist is primarily responsible for dispatching all

university police activities using a computer aided dispatching system.  *See* Def. Exhibit

9.  The Specialist gathers information, processes it quickly and exercises judgment in

dispatching patrol officers to individual incidents. Id.  Skills required for these duties

include the ability to work efficiently under pressure, to balance multiple tasks at one

---

[3]  Attached as Exhibit 9-26 are Affidavits from each person responsible for the hiring decisions for the positions to which Plaintiff applied in Spring 2005.  The Affidavits explain the hiring officials' legitimate non-discriminatory reasons for hiring the successful candidate and the reasons for not hiring Slovinec.

time and to be able to prioritize situations.  *Id.*  The minimum qualifications for the

position include one year of relevant work experience, preferably in the military or a

security related field, the ability to complete a requisite law enforcement training

academy program, and proficiency in the use of computer and telecommunications

equipment. *Id.*

Slovinec has neither military or security related experience, nor does he have any

telecommunications experience.  *See* Def. Exhibit 27.  As such, he fails to make a *prima*

*facie* case.  Assuming *arguendo* that he could meet the minimum qualifications for this

position, he still cannot show how the University's decision not to select him was a

pretext for unlawful discrimination.  The University clearly had a legitimate non-

discriminatory reason for not hiring Slovinec:  he had no previous dispatch experience or

relevant customer service experience, and none of the stated objectives on his resume – to

find employment in "writing, editing, education communications, public administration

business, or real estate" – had any relationship to the Communications Specialist position.

Moreover, given the qualifications of the applicant hired into this position,

Slovinec cannot adduce any credible evidence that the failure to hire him was

discriminatory.  The successful applicant had over 20 years of experience with the

Department of Defense, had served in the military for four years, and had customer

service and telecommunication experience as well as prior experience in a university

setting.  *See* Def. Exhibit 9.  Because Slovinec can provide no evidence to suggest that a

reasonable employer would have found him to be *significantly* better qualified for the job,

no trier of fact could infer that the University's hiring decision was a pretext for unlawful

discrimination.  *See Morgan v. Fed. Home Loan Mortgage Corp.,* 328 F.3d 653-654

(finding that plaintiff could not rebut legitimate non-discriminatory reasons); *Aka*, 156

F.3d. at 1298.  Slovinec does not advance a shred of evidence which could lead a jury to

doubt Defendant's legitimate non-discriminatory reasons – that it hired the successful

candidate because she was the best qualified candidate for the job.[4]  No rational juror

could conclude on these facts that plaintiff's non-selection resulted from age-based

discriminatory animus.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430

(5th Cir. 1996) (en banc) ("It is well-settled that an employee's subjective belief that he

suffered an adverse employment action as a result of discrimination, without more, is not

enough to survive summary judgment.").

Also fatal to Slovinec's claim are the stated objectives on his resume (i.e., to

attain a position in writing, editing, education communications, public administration

business, or real estate).  *See* Def. Exhibit 27.  Those objectives are entirely unrelated to a

Communication Specialist.  This fact alone would have led the hiring official to disregard

Slovinec's application.  *See* Def. Exhibit 9.  For all of these reasons, Slovinec cannot

defeat summary judgment with respect to this position.


*Associate Director of the Center for Democracy*

The Associate Director position is responsible for designing, establishing and

building a new center for democracy and election management. The Center teaches

courses on democracy and election management, conducts research, and advises election

---

[4] It is noteworthy that the position was filled by someone over 40 years of age. Though Slovinec need not show that Defendant filled the position with a person outside his protected class (i.e. under 40) in order to make out a *prima facie* case, *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002), he cannot adduce any facts that would lead a reasonable fact finder to infer pretext where the person ultimately selected for the position fell within the same protected classification.  *See King*, 9 F. Supp. at 7 ("'[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing.'") (quoting Birkbeck, 30 F.3d at 513).

commissioners, administrators of elections, legislators and others on election-related matters. *See* Def. Exhibit 10. The minimum qualifications for this position are a Master's degree (preferably a PhD), two to four years of experience in election or democracy related work internationally as well as in the U.S., computer literacy, and foreign language proficiency. *Id.*

Slovinec clearly did not meet the minimum qualifications for this job. He has no experience in elections or democracy related work, domestically or internationally. Moreover, although Slovinec claims that he worked five summers in the elections department office of Cook County, *see* Pl. Depo. p. 77-79 at Exhibit 28, this experience did not meet the minimum qualifications for the job and was not disclosed on his resume (and hence could not have been considered at the time the University decided not to interview him) in any event. In addition, Slovinec has no foreign language skills.

By contrast, the person selected to fill the position held a doctorate from Oxford University and had ten years of relevant experience, previously serving as Deputy Director of Eastern Europe and Program Director for Asia at the International Republican Institute, where he designed and managed a wide variety of programs to promote democracy. In addition, the successful applicant directed programs in connection with a civil education project to reform social science education at universities across Eastern Europe and Eurasia. *See* Def. Exhibit 10. Given this undisputed evidence of record, Slovinec does not and cannot offer any credible evidence that he was qualified for the Associate Director position. He therefore cannot make out a *prima facie* case of discrimination, nor can he proffer any evidence to suggest that the University's reasons for selecting the successful candidate are unworthy of credence. *See, e.g.*, *Mitchell*, 964

F.2d at 585 (holding in Title VII case that "subjective beliefs" of plaintiff "are wholly insufficient evidence to establish a claim of discrimination as a matter of law"); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 459 (4th Cir. 1989) (same); *Smith v. Chamber of Commerce of the United States*, 645 F. Supp. 604, 608 (D.D.C. 1986) (same).

*Staff Assistant (International Affairs)*

The Staff Assistant position provides administrative support to the Office of International Affairs and the Office of Development. *See* Def. Exhibit 11. Minimum requirements include three to five years of experience as an administrative assistant, superior word processing, receptionist, and proofreading skills, and professional and communication skills. Experience as a receptionist in higher education is preferred.

Slovinec plainly did not meet these minimum qualifications because he has no work experience as an administrative assistant – much less three to five years of such experience – and he does not have any receptionist experience. Moreover, even assuming he could show that he met the minimum qualifications for the position, he still could not show that the University's reasons for not selecting him were a pretext for unlawful discrimination. In particular, Slovinec has no credible evidence to suggest that he was better qualified than the person who was selected – who, unlike Slovinec, had three years of experience as a staff assistant at another university. *See* Pastor Affidavit at Def. Exhibit 11. No fact finder could reasonably conclude based on this undisputed evidence that the University's stated reasons were a pretext for unlawful discrimination. *See Aka*, 156 F.3d. 1284, 1298 (D.C. Cir. 1998). To the contrary, a comparison between

Slovinec's and the selected candidate's credentials reveals that the successful candidate met the desired qualifications for the position. Slovinec did not.

### *Producer (WAMU)*

The Producer position works closely with senior talk show hosts at WAMU, the University's radio station, to create topical issue-oriented programs. A successful candidate must possess two years of experience in journalism, news and publishing as well as demonstrated skills working with creative individuals and working under deadlines. *See* Def. Exhibit 12. Knowledge of radio production techniques and previous talk show experience is preferred. *Id*.

Once again, even a cursory review of Slovinec's resume reveals that he obviously did not meet the minimum qualifications of this position. He has no background in journalism or radio broadcasting. *See* Def. Exhibit 12. As such, he fails to make out even a *prima facie* case. In contrast, the person selected to fill the position had previous work experience as a host and producer of an hour long weekly radio program for public access radio. The successful applicant also served as a temporary producer for *Public Interest with Kojo Namdi,* and he worked previously on the *Diane Rehm* show. *See* Def. Exhibit 12. Given these undisputed facts, Slovinec can neither make out a *prima facie* case of unlawful discrimination nor show that the University's stated reasons for selecting the successful candidate were a pretext for unlawful discrimination.

### *Administrative Assistant (School of Communication)*

The Administrative Assistant position assists in executing all administrative duties pertaining to recruitment, admission, conversion, and matriculation of graduate

students within the School of Communication. *See* Def. Exhibit 13.  Among other things, the position is responsible for marketing activities such as event planning, recruitment fairs and newsletters. *Id.*  The successful candidate also must possess substantial administrative support experience. *Id.*

Slovinec did not meet the minimum qualifications for this position because he has no administrative support experience. And even assuming he could show that he possessed these minimum qualifications, he could never establish that his non-selection resulted from age-based discriminatory animus.  The successful candidate had four years of customer service and administrative support experience as a client associate at Merrill Lynch.  In that position, she served as the first point of contact for clients on the telephone, in person and at events.  She also had two years of event planning and catering experience, some of which was obtained at a university. *See* Def. Exhibit 12.  Given the successful candidate's qualifications in customer service, administrative support, higher education and event planning, Slovinec cannot possibly show that he was *significantly* better qualified for the position.  As such, he has no evidence that would raise an inference of unlawful discrimination.

*Document & Imaging Specialist*

This position processes, prepares and maintains all graduate and undergraduate admission files. *See* Def. Exhibit 14.   The successful candidate must possess a high school diploma and familiarity with universities. *Id.*  Slovinec was not selected for an interview for this position because his stated career objective did not even remotely match the position. *See* Piazza Affidavit at Def. Exhibit 14.  Because the position plainly

did not involve any of the activities that Slovinec listed as his *"objectives" on his resume* -- "writing, editing, education communications, public administration business, or real estate development" – his application would have been disregarded. *Id.* The University thus has established a manifestly legitimate, non-discriminatory reason for not considering Slovinec's application, and Slovinec therefore must proffer some evidence why his non-selection could have resulted from age discrimination. Instead, he relies on sheer conjecture and speculation, which is particularly insufficient given the undisputed evidence that the selected candidate was 49 years old and was an internal candidate who had previous and successful experience in the position. *See* Def. Exhibit 14.

### Program Coordinator (School of Public Affairs)

This position provides research, writing, and administrative support to the national justice system technical assistance, research and training projects conducted by the Justice Programs Office of the School of Public Affairs under contract between American University and the U.S. Department of Justice. *See* Def. Exhibit 15. The Program Coordinator provides information and other assistance to judges and other senior court systems practitioners and elected officials throughout the country; performs substantial data gathering and analysis; prepares letters, memoranda and other documents; performs managerial and administrative functions to ensure maintenance of accurate fiscal records; and handles programmatic reporting to government and other sponsoring agencies. *Id.* The minimum qualifications for the position are a Bachelor's in Justice Administration or related field and "experience in performing tasks relevant to providing research, analytic, administrative and support of Justice Systems technical

assistance, training and research services such as those conducted by JPO (Justice Program Office)."

This position was initially advertised on January 4, 2005 and later withdrawn on March 17, 2005. The School of Public Affairs chose not to fill the position because none of the applicants met the position requirements. *See* Cooper Affidavit at Def. Exhibit 15.

Certainly Slovinec did not meet the minimum qualifications of the position: he had no administrative support experience and no management experience, and he did not have experience with the various databases necessary to monitor programmatic and fiscal information relevant to the various sponsored projects with JPO. His resume also reveals no expertise with project management functions or database software other than Windows 95. *Id.* He thus cannot establish a *prima facie* case of age discrimination with respect to this position, nor has he adduced any evidence whatsoever that the decision not to hire him resulted from age-based animus.[5]

Even assuming *arguendo* that Slovinec could show that he possessed the minimum qualifications for this job, he still cannot show that Defendant's failure to hire him for this position was a pretext for unlawful discrimination. Slovinec has no evidence that the University stopped recruiting for this position in order to avoid offering it to him for age-related reasons, and the University's success in filling the position with a candidate far more qualified than he when it re-opened the position demonstrates the

---

[5] Late in 2005, the School tried again to recruit for the position. There were some concerns about whether the position would continue to be funded, and, as a result, an internal candidate was promoted into the position. The successful candidate had worked on the JPO grant as a research assistant for the preceding eight months, had a Bachelor's degree from the School of Public Affairs at American University, and had extensive computer skills, including Microsoft word, excel, access, powerpoint, design pro, lexus nexus and web maintenance and development functions. His prior experience as a manager of a small restaurant and the YMCA Youth and Government office were also factors in selecting him to fill the position, since it demonstrated his ability to manage and perform multiple tasks simultaneously and to meet deadlines. *See* Cooper Affidavit at Def. Exhibit 15.

legitimacy of its decision.  This is underscored by the fact that the person ultimately

selected to fill the position had *already* worked in the JPO office as a research assistant,

and, therefore, not only had familiarity with the JPO but also the relevant administrative

and managerial experience.


*Grant and Contract Manager (Research Development Office)*

The Grant and Contract Manager provides assistance to faculty and administrators

in securing and administering grants and contracts, and is responsible for ensuring that

programs adhere to the terms and conditions specified in grants and contracts. *See* Def.

Exhibit 16.  The minimum qualifications for the position are two to seven years of

experience in proposal development and project management for grants.  Preferred skills

include coursework in grants and contract law, and knowledge of accounting, contracts,

and related legal issues. *Id.*  Slovinec simply does not possess these minimum

qualifications, particularly since – as he admitted at his deposition – he has no experience

in administering grants.  *See* Pl. Depo. at Def. Exhibit 29.  Accordingly, he cannot make

out a *prima facie* case of age discrimination, and his claim also fails in light of

undisputed evidence that the person selected to fill the position had four years of

experience with grants and contracts at non-profit organizations.  *See* Kirby Affidavit at

Def. Exhibit 16.


*Research Assistant (School of Public Affairs)*

The Research Assistant position provides administrative and information systems

support to several justice systems projects being undertaken for state and federal

government agencies. Duties include fiscal monitoring (including updating ledgers and assuring compliance with federal grant guidelines); senior administrative support; and database design, development and manipulation to respond to a wide range of research needs. *See* Def. Exhibit 17.  The minimum qualifications for the position are at least three years of relevant experience, a Bachelor's degree, and familiarity with multiple database management software packages as well as Microsoft Office package. *Id.* Slovinec did not meet the minimum qualifications of this position because he had no project management experience, nor did he have experience with the various databases necessary to monitor programmatic and fiscal information relevant to the various sponsored projects with JPO.  His resume indicates no expertise with project management functions or database software other than Windows 95. *Id.*

Accordingly, he cannot make out a *prima facie* case of age discrimination, and his claim also fails in light of undisputed evidence that the person selected to fill the position had performed webpage design functions, had extensive computer skills, including Microsoft word, excel, access, powerpoint, design pro, lexus nexus and web maintenance and development functions, as well as, managerial skills.[6] *See* Cooper Affidavit at Def. Exhibit 17.

### *Administrative Assistant (Washington Semester Program)*

The Administrative Assistant acts as a liaison between the Washington Semester Program and its constituents, especially students and office visitors.  The Administrative Assistant answers incoming calls from constituents, greets students and visitors, records information requests from students, performs data entry and maintains e-mail

---

[6] The person selected for this job later filled the Program Coordinator position (# 4928) listed above.

communications with students. *See* Def. Exhibit 18. The minimum qualification for the position is an Associate degree. Preferred skills include customer service and receptionist experience. *Id.* Even assuming Slovinec could make out a *prima facie* case, his claim still fails as a matter of law because the University has a legitimate non-discriminatory reason for declining to hire Slovinec for this position: Slovinec had no receptionist or relevant customer service experience, and none of the career objectives listed on Slovinec's resume was related in any way to the duties of the Administrative Assistant position. Moreover, it is undisputed that the successful applicant already was a temporary worker in the office and had performed well in that capacity. See Greene Affidavit at Def. Exhibit 18. Given these facts, Slovinec cannot establish that the decision to select the temporary worker rather than him was a pretext for age discrimination.

*Lead Researcher, Shared Goals*

The Lead Researcher works to assure that the objectives of the Shared Goals grant from are met. The Lead Researcher refines the research design, develops the data collection instruments, oversees database development and data analysis, and writes the project reports for the grant. *See* Def. Exhibit 19. The minimum qualifications for the position are a Ph.D. (or equivalent graduate coursework or experience beyond a Masters) in social sciences and a high level of research experience. The successful candidate must be skilled in questionnaire design, qualitative and quantitative research and data analysis. K-12 experience is preferred. *Id.* Slovinec obvious did not possess the minimum qualifications. He has no training in quantitative research and the use of statistical

22

analysis software, nor does he hold a Ph.D. or the equivalent in the social sciences. As a result, his claim fails as a matter of law, particularly given the undisputed evidence that the person selected for this position had a Ph.D. in Sociology and had extensive experience and training in data analysis, data collection instruments, and statistical analysis software. *See* Def. Exhibit 19.

### *Education Technology Specialist*

The Technology Specialist works with faculty members, staff, and students to ensure that technology is being integrated successfully into methods and content courses and that the students in these classes are fully supported when integrating technology into the classroom. *See* Def. Exhibit 20. The minimum qualifications for the position are a Master's degree in Education Technology or equivalent experience and education. The successful candidate must be experienced with Client Server Architecture and Server applications (such as SQL, LDAS, Working Management, File Management and ideally Apple's Open Directing Systems), and also must have expertise in managing open source applications, web-design applications such as DreamWeaver, digital and video technologies, and Mac and PC Client Platforms or have a comparable current skill set. *Id.*

Slovinec does not possess these minimum qualifications. He has neither a degree in education technology, experience training adults, nor the appropriate technological skills with servers, web based data applications and SQL skills. In contrast, the successful applicant held a Master's Degree in Instructional Technology and Media from Columbia University and had experience working at a college of education and with

teachers.   She also had the requisite technical skills, including SQL server and web-based data applications. *See* Sodani Affidavit at Def. Exhibit 20.

*Academic Advisor (School of International Services)*

The Academic Advisor position was advertised on January 25, 2005 but was later withdrawn when the School of International Services chose not to fill the position.  *See* Levinson Affidavit at Def. Exhibit 21.  As such, Slovinec cannot satisfy the fourth prong of his *prima facie* case because he cannot show that Defendant continued to seek applicants from persons of his qualifications. *See Carter*, 387 F.3d 872 (D.C. 2004). Therefore his claim fails as a matter of law.  Even if he could make such a showing, Slovinec still lacked the qualifications for this position.  The position provides professional advising to students with regard to curricular opportunities and plays a key role in academic affairs from curriculum planning and review.  The minimum qualifications for the position are a Master's degree and strong student support focus. Three years administrative, higher education or related experience is preferred.  *See* Def. Exhibit 21.  Slovinec obvious did not possess the minimum qualifications.  He has no relevant experience advising students.  As a result, his claim fails as a matter of law.

*Customer Service Representative (Enrollment Services)*

The Customer Service representative position serves as the initial contact with the Office of Enrollment and provides support for inquires from prospective and current students regarding all aspects of graduate and undergraduate admissions and financial aid. *See* Def. Exhibit 22. The minimum qualifications are a high school diploma and two years of leadership, computer and office experience. *Id*.

Slovinec cannot satisfy the elements of a *prima facie* case of discrimination with respect to this position because he lacked the requisite customer service experience. Moreover, his stated objective on his resume – to find employment in "writing, editing, education communications, public administration business, or real estate" – had no relationship to the Customer Service Representative position. *See* Carroll Affidavit at Exhibit 22. In any event, Slovinec's claim fails as a matter of law because the University plainly had a legitimate reason for selecting another applicant, and Slovinec has no evidence that the University's action was a pretext for unlawful discrimination. Specifically, the University filled this position with an applicant who had gained extensive customer service experience through dealing with the public on environmental issues at the Massachusetts Public Interest Research Group; as a crew leader for a household packing company, where she supervised employees in the delivery of services; as a therapist for Autistic children; as a cook at a restaurant; as a peer guidance counselor at American University; as a official representative of her sorority; and as an intern at American University admission's department, where she participated in recruitment events and other related activities. *Id.* Slovinec offers no credible evidence that the

University's decision to select this qualified applicant rather than him was a pretext for unlawful discrimination.

*Administrative Assistant (School of Public Affairs)*

The Administrative Assistant serves as the receptionist and initial contact for visitors to the Office of the Dean in the School of Public Affairs. *See* Def. Exhibit 23. The position is responsible for all front desk duties such as answering calls from constituents, greeting students and visitors, recording information, sorting incoming mail and answering questions. *Id.* The minimum qualifications for the position are a high school diploma and one to two years of work experience in an office environment (or equivalent education experience).

Even assuming Slovinec could make out a *prima facie* case with respect to this position, his claim still fails as a matter of law because the University has articulated a legitimate non-discriminatory reason for the personnel decision about which Plaintiff complains. Specifically, Slovinec would not have received an interview because he had no receptionist or administrative support experience, and because his stated objectives – to find employment in "writing, editing, education communications, public administration business, or real estate" – had no relationship to the Administrative Assistant position. Moreover, the person selected to fill the position had relevant experience as a Senior Administrative Assistant at American University, where he answered phones, processed and entered data, and assisted students with questions. He also had customer service experience and had obtained his BA from American University. *See* Schmitt Affidavit at Def. Exhibit 23. Given these legitimate non-

discriminatory reasons, Slovinec must prove *both* that the reason for his non-selection was false and that age discrimination was the real reason. He has no such evidence.

*Program Coordinator (Gay, Lesbian, Bisexual, Transgender and Ally Resources)*

The Program Coordinator is responsible for researching, designing, implementing and evaluating Resources Center programs, including the administration of the Campus Awareness Programming Series and the Rainbow Speakers Bureau peer education programs. *See* Def. Exhibit 24. The minimum qualifications for the position are a Master's degree in a related field and previous experience working with gay, lesbian, and transgender populations. The successful candidate must have an academic and practical understanding of how sexuality intersects with race, class, gender, and nationality and must have knowledge of issues related to the gay, lesbian, bisexual, transgender, and ally communities. The candidate also must also have demonstrated abilities to plan and implement educational and informational programs in a diverse cultural environment and to work collaboratively with a wide variety of students, faculty and staff. *Id.*

Slovinec does not possess these minimum qualifications.[7] He has neither a Master's degree in a related field nor the relevant work experience. Because he cannot seriously claim that he possesses the minimum qualifications for this position, he fails to state a *prima facie* case of discrimination and his claim fails as a matter of law.[8]

---

[7] When asked what his relevant experience was for this position during his deposition, Plaintiff's response was "Well, I worked for a paper in a gay relations office . . . I did live in the 44th Ward, which is your heavy gay population." Pl. Depo. P 120-121 at Def. Exhibit 30.

[8] Unlike Plaintiff, the successful candidate had significant experience working with relevant student populations. He was a Director of the Lesbian, Gay, Bisexual, Transgender (LGBT) Student Empowerment Project; he was an executive member of PRIDE, an LGBT student organization; he worked

*Project Coordinator (Carter-Baker Federal Election Commission)*

The Program Coordinator position was advertised on April 18, 2005 and later withdrawn. The Vice President of International Affairs stopped the search after he determined that the position was no longer necessary. The position has not been reposted. *See* Pastor Affidavit at Def. Exhibit 25. As such, Slovinec cannot satisfy the fourth prong of his *prima facie* case because he cannot show that Defendant continued to seek applicants from persons of his qualifications. *Carter,* 387 F.3d 872 (D.C. 2004). Therefore, his claim fails as a matter of law.

*Senior Administrative Clerk (School of International Services)*

The Senior Administrative Clerk is responsible for supporting academic counselors in directing academic operations of the graduate programs in the School of International Services. The incumbent must respond to a wide variety of matters from prospective and enrolled students, university staff, alumni and others. *See* Def. Exhibit 26. The minimum qualifications are a Bachelor's degree. Two years of office experience is preferred. Assuming Slovinec can satisfy the elements of a *prima facie* case, his evidence of age discrimination is insufficient to merit a trial. Defendant has articulated legitimate non-discriminatory reasons for the personnel decision about which Plaintiff complains.[9] Slovinec advances no credible facts to show how the Defendant's reasons are false or should not be believed. Accordingly, his claim fails.

---

as a peer educator for youth conferences, a project of advocates for youth; and he worked in a LGBT office at a university for a year and a half. *See* Wright Affidavit at Def. Exhibit 24.

[9] Slovinec would have been passed over for interview because his stated objectives to find employment in "writing, editing, education communications, public administration business, or real estate" had nothing to do with the job and he had no administrative experience. By contrast, the person selected was the best qualified candidate because he had earned a Master's degree from the School of International Services

## VI.    CONCLUSION

In the end, Slovinec cannot make out a *prima facie* case of unlawful age discrimination for most of the 18 positions he sought.  For the remaining positions, all Slovinec can argue is that these were entry level positions for which he was suited in light of his educational background and clerical experience. But that argument does not create a jury question as to pretext.  Instead, it impermissibly invites the Court to function as a "super-personnel department" to second-guess the University's business decisions.  *See Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("[T]he issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers") (alterations in the original) (internal quotation marks and citation omitted); *see also Carter v. Rubin*, 14 F. Supp. 2d 22, 44 (D.D.C. 1998) ("[A]nti-discrimination laws do not entitle this court to sit as a 'super-personnel department' that reexamines an [employer's] decision whether to terminate an employee . . . .  In essence, when an employer articulates a reason for the termination of an employee not forbidden by law, this court is precluded from considering whether the reason was fair or correct . . . .").  Slovinec has <u>no</u> evidence that the University's legitimate non-discriminatory reasons are pretextual; he has <u>no</u> evidence that he is *significantly* better qualified for the positions at issue than the applicants who were selected; and he has <u>no</u> other evidence that any of the various University personnel who made the decisions at issue harbored discriminatory attitudes toward older workers in general or him in particular.  No reasonable jury could infer discrimination from this

---

("SIS") and, therefore, had 2 years of knowledge of SIS and its academic programs.  In addition, the person demonstrated administrative competencies by having worked on a joint partnership project between AU and the International Management Institute to put on a 2 day conference.  *See* Clapper Affidavit at Def. Exhibit 26.

record.  Slovinec's allegations do not merit a trial and his Complaint therefore should be

dismissed with prejudice on summary judgment.


                                        Respectfully submitted,

                                        AMERICAN UNIVERSITY


                                        _____/S/_____
                                        Hisham Khalid
                                        D.C. Bar No. 445494
                                        Associate General Counsel
                                        Office of General Counsel
                                        4400 Massachusetts Avenue, NW
                                        Washington, DC 20016-8165
                                        (202) 885-3285

                                        Attorney for Defendant



Dated:  December 1, 2006

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Summary Judgment Motion and

Memorandum In Support of Defendant's Motion to be served by first-class mail to the

Plaintiff at the address below:


Joseph Slovinec
425 Second Street, N.W.
Washington D.C. 20001


\_\_/s/_____
Hisham Khalid