IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,                                        06-455
  Plaintiff,                                        (gk) Judge Gladys Kessler
  Vs.
American University,
  Defendant

MEMO ON CLARIFICATION OF FINANCIAL AID DISCRIMINATION AND HOSTILE ENVIRONMENT FOR JOB SEARCH ISSUES: MR. KHALID SHOULD ADDRESS THESE IN SEPARATE BRIEF FROM MOTION ON SUMMARY JUDGMENT: START OF ARGUMENTS AGAINST THAT MOTION

1. Plaintiff complains to the court that Defendant American University is trying to overload the case with details and self-serving complaints in excess of issues on the 18 job descriptions in both sides' Motions for Summary Judgment. This is only first memo: Plaintiff hopes to add memos before January 2 on issues in cases in Plaintiff's favor: American U. survey of ages indicates discrimination occurred when most of hired employees were under 40, and courts have ruled this is enough to prove a case: Mr. Khalid ignored citations on survey of 30-54 year olds and "statistics comparing number of older federal employees as placed ..with number of younger employees sufficient to support finding of age discrimination (ADEA) ", also economic suffering of 40-65 year-olds in *Polstorff v. Fletcher,* 452 F.Supp. 22 (1978), also in *Khair v. Campbell,* 893 F.Supp. 317; amount of Hispanics who took Chicago Police test, *U.S. v. Chicago,* 549 F2d 415 (1977, Ca7 Il..)

2. In this case, eviction issues should concentrate on decreased Plaintiff's access to Job programs which created a hostile environment for job search: **in cases where American University offered admissions package and its discriminatory handling of issues of financial aid, evictions, and lack of job advising for ex-Illinois residents like J. Slovinec who were lured to a large rent increase in Maryland,** it is permissible in EEOC case to list these as creating an "intimidating or hostile environment..interferes with work performance, otherwise adversely affects employment" opportunities like in a school where coaching usually accompanied teaching, *Eggleston v. South Bend Community School,* .858 F.Supp. 841 (N.D. Ind. 1994) Mr. Khalid on including an exhibit of Warrant of Restitution for $4539 where American U.s attorney Sander Davidson unethically sent out a warrant without a valid judge's signature, and which lacked legal force: the space is either blank or had illegible initials: if Mr. Khalid does not issue a retraction within 3 days or by December 21, 2006, J. Slovinec will forward it for U.S. Department of Justice investigation along with other items in a case which is more related to the eviction than this one, U.S. Court of Appeals case 06-7039, Petition of Rehearing on Grounds There is a Federal Question of Rights of Homeless to Personal Belongings: See Paragraph 2 of December 15, 2006: "2. This is filed with a complaint to the office of U.S. Attorney General

RECEIVED
DEC 1 8 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Alberto Gonzales that this panel of Judges Sentelle, Tatel, and Griffith have neglected their duty to enforce the law and oppose wrongdoing when the court ignored these wrong and unethical actions which were reported to it: (by Plaintiff in this case)

a. Joan O'Brien made a service agreement to pay J. Slovinec eviction assistance on July 29, 2005. On August 18, 2005, Kenneth Rumsey wrote a false and fraudulent letter to J. Slovinec which claimed above July 29 agreement did not exist: "no record of applying for assistance to avoid eviction": this could have violated federal or Maryland law, and the U.S. Department of Justice is asked to investigate Rumsey and his Montgomery superiors on letterhead, Carolyn Colvin and Douglas Duncan.

b. (In late August 2005) the court has a copy of Authorization to Release/Receive Information where Vera Johnson made a specific agreement to pay Mary Malecki of Public Storage, 1916 N. Elston, Chicago, Il. $300 to reclaim most of J. Slovinec's personal belongins which was a breach of a legal contract (since Johnson never paid it).

c. Please see paper which lists a shelter at 600 E. Gude, Rockville, Maryland: (in a disputed factual area, one crisis center worker at )Montgomery County, Maryland claimed this shelter was available for Joseph Slovinec's use and when Appellant called there, an African-American man said the shelter at 600 E. Gude was only for the use of mentally ill and substance abusers during the summer and both Montgomery County and the state of Maryland, in agreement to use the county office, refused to allow Appellant to use an homeless shelter in the state of Maryland" O'Brien and Johnson work at Montgomery County Department of Health and Human Services: later on p.2 of brief it says, "Appellant has right to request standing and funds under Title III of McKinney-Vento Act 42 U.S.C. 11301, federal funds for Maryland's emergency shelters: see www.fema.gov.. Website for December 11, 2003 news release of FEMA/U.S. Department of Homeland Security, 'FEMA announces $1,896,808 for Homeless Aid Awards for Maryland' where Bethesda was eligible for Maryland State Set-Aside Committee."

3. Mr. Khalid's defense omits two crucial material facts: Dean Goodman sent Plaintiff a letter in December 2004 which indicated Plaintiff was immediately eligible to compete to jobs with American University staff which had a benefit of tuition remission or free tuition including tuition for Spring 2005; and during a meeting with Dean Goodman in January 2005, Dean Goodman had little familiarity with students with Illinois residency like J. Slovinec and Dean Goodman verbally said there was not a work-study program (probably in his school or office): between then and 2006, Dean Goodman started work-study.

4. American University's catalog of 2005-2005 (including pp. 26-33, 50) had a promise or implied promise of access to emergency loans including the Cafritz, Morgenstern, and Skaskan loans as a "last resort" if students could not get loans or money from other sources: American U. had actually promised to support a loan level of $14,000 to pay for the $11,000 in charges and when unemployed p. 2

Plaintiff followed American U. Financial Aid Office's advice and applied for only private loans, Plaintiff was turned down for every private loans: his professors Fisher and Nan recorded grade assignments with averages of A and B+ which were eligible for aid, and Ingrid Valentine was severely discriminatory when she ignored Plaintiff's request about July 2005 to get an emergency loan to pay expenses including the $4539 Julie Weber of American U. Housing and Dining had requested in Montgomery County court. Plaintiff only earned about $1700 since February 2006, his total since January 2005, and Spring 2005 bill is impossible to pay unless American U. requests grant or he learns of one: chances are remote, he lacks capacity to pay bill and most students seem to get financial aid.

5. American University is making a disproportionate effort to focus attention on rejection of Plaintiff from Master's Degree in International Service program which was and is definitely eligible for federal loans: when his recorded grades were high enough, Plaintiff wanted to transfer the two classes from Graduate Certificate in Peacebuilding program which only used private loans and was not certified to get federal loans, a policy Ronald Fisher promised to ask to change in a March 3, 2005, e-mail, to a program where it was easier to get financial aid: American U. refused due to financial greed because it was easier for their staff to try to get judgments from unemployed Plaintiff's late father's estate where he had $8700 in February 2005: Plaintiff wasted the money with several weeks of hotel bills including weekly stays in Maryland before American U. let him into Park Bethesda on Feb. 28, 2005: American U. miscalculated the amount which was available which dwindled to less than $2300 by May 2005 and $60 in June 2005.

6. In regards to these above financial aid discrimination actions which were "harassment" and attempted "exploitation" of estate funds under American University policy, omissions means Plaintiff cannot agree that Items 5-9 in Background can be counted in Defendant's Statement of Material Facts Not in Dispute" :in 5, American U. used term cancellation, not "dropped"; in 6 it is biased to omit that J. Slovinec could not legally reside in a shelter or anyplace else in Maryland if he left Park Bethesda, so it was not rational for him to leave there unless American U. designated a shelter and its affiliate, the United Methodist Church, owns housing and shelters, Item 7 on Ladner's public meetings was already described as false to court; Ladner blundered when he did not discuss an urgent or emergency return to Illinois for Plaintiff who after April 19 learned Roosevelt University in Chicago about April 18, 2005, had admitted him for September 2005, and after barring and lack of progress on job search, it was reasonable for J. Slovinec to change his position after Item 8 in April 2005 when he did not intend to sue

7. Plaintiff might ask for Motion to Strike Exhibit 9 since Plaintiff remembers at Some point Brenda Harner or he dropped this from inquiry of discrimination; it was called Communications Specialist #1402 and Mr. Khalid is using this improperly to create tensions between Plaintiff and military and police p. 3

. If Plaintiff needs to add information on other positions, he will do so by January 2: the court is asked to read and use his previous filings in opposition to Defendant's Motion for Summary Judgment

8. The court and American University are obligated to respect portions of 29 U.S.C. 49b which calls for, in relation to U.S. Employment Service, "minimum standards of efficiency" of D.C. and Montgomery County employment services and "assisting them in meeting problems peculiar to their locality"; Plaintiff is obligated under 29 U.S.C.S. 49B (1B) to accept first full-time job offer he receives in D.C.: he has never received full-time job offer since January 2005: only three part-time jobs where salaries are demeaning to him. Plaintiff maintains Judge Kessler is obligated to consider this in all court rulings although in a motion she refused formal jurisdiction over D.C. Dept. of Human Services actions on J. Slovinec's case: Mr. Khalid is informed J. Slovinec does not believe Mr. Khalid has legal rights to advise on or supervise an independent request J. Slovinec wrote to the transition team for Mayor-elect Adrian Fenty for his talks with American University interim President Cornelius Kerwin, George Mason University Professor Susan Nan who taught Plaintiff at American U., and staff of Food Stamp Employment Training program at University of District of Columbia/Van Ness to discuss past training of J. Slovinec in D.C. and future options after his Food Stamp Employment Training class in Summer 2006.

9. Dr. Ronald Fisher is out of contact with Plaintiff's inability to pay bill and seemed to want to recommend Plaintiff only for more schooling, not a job: Dr. Fisher is cautioned to apologize for his September 2005 e-mail and action within a few days to avoid charges of harassing the homeless: and his actions will be discussed with Mayor-elect Fenty who is more vigorous in advocating rights of homeless under D.C. Homeless Services Reform Act than Mayor Williams. Fisher seemed to seek financial profit from Plaintiff to attend Summer Institute on Peacebuilding and Development: he has created hostile environment when Plaintiff was on food stamps and might only narrowly get funds to attend Summer Institute: this makes it more difficult for Plaintiff to discuss ideas like encouraging Palestinian President Abbas to stay in office until 2009 to negotiate peace even if there is a new parliamentary vote; and a maximum sentence of life imprisonment for Saddam Hussein to help gain Sunni Arab agreement to a plan for peace or autonomous regions with Iraqi oil money for Sunni areas: the murder of King Feisal II in 1958 after he attended British Sandhurst academy with cousin King Hussein in Jordan and also killing of his killer, Iraq's dictator General Kassem, in 1963 actually worsened violence and instability: under U.S. occupation these patterns should not be imitated. American U. is encouraged to reverse its opposition to Alternative Dispute Resolution to discuss whether Plaintiff could finish Dr. Fisher's program, or transfer elsewhere, or do something to end his lack of financial aid and economic deprivation as a disadvantaged white (see issues including Fisher's personal interview of Plaintiff and professional goals) in *University of California Regents v. Bakke,* 438 U.S. 265 (1978).

PROOF OF SERVICE: To; Hisham Khalid, American U. 3201 New Mexico Av., N.W., Washington, D.C. 20001  4th of 4
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 December 18, 2006

*Joseph Slovinec* [signature]