IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,
   Plaintiff,
vs.
American University,
   Defendant

06-455
(gk) Judge Kessler

RECEIVED
U.S. DISTRICT COURT
2007 MAR 14 PM 7: 39
NANCY M.
MAYER-WHITTINGTON
CLERK

RECEIVED
MAR 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DISCUSSION OF COMMON HATE INCIDENTS AT DEPAUL AND AMERICAN UNIVERSITY: INVITATION TO DEPAUL TO COMMENT ON DEBT ISSUES, PROFESSIONAL DEVELOPMENT GOALS

1. This pleading is addressed to Judge Kessler, American University Legal Counsel Hisham Khalid, DePaul University Vice President and General Counsel Jose Padilla, and also to the United States Department of Justice since it is important to say DePaul General Counsel Jose Padilla is not the same person as Jose Padilla, the terrorism suspect.

2. It is brought to the attention of the U.S. Department of Justice that an original purpose of this pleading was to have been, and is not now, focusing on J. Slovinec's defenses against repayment of loans in an appeal to the U.S. Supreme Court of 05-5372 Slovinec v. Muncie case: however, J. Slovinec now says U.S. Supreme Court Clerk William Suter is declining to file papers on the basis of error: Mr. Suter, by S. Elliott, wrote March 9, 2007: "The papers are returned for the following reason(s): Your case must first be reviewed by a United States court of appeals or by the highest state court. Mr. Suter seems to imply in error U.S. District Court Case 05-1690 was not reviewed by the United States Court of Appeals in Case 05-5372 when the Court of Appeals did review the case and Petition for Rehearing of 05-5372 is attached as Appendix H of April 25, 2006: The March 10, 2006 denial of relief by U.S. Court of Appeals was attached to Appendix C of J. Slovinec's original timely filing on August 30, 2006 (Plaintiff believes this was given to U.S. Supreme Court police) and Mr. Suter seems to claim this was not received: the March 2007 filing occurred because the U.S. District Court refused to replace a ruling copy of Judge Kessler's ruling of August 19, 2005 which was stolen at the CCNV shelter where J. Slovinec resides. (Court refused before last week)

3. Plaintiff will nonetheless give this statement of facts:
   In March 1986 J. Slovinec signed an agreement to work for 40 hours per week with Cook County Clerk of the Circuit Court Morgan Finley where he worked until 1992: he has never received a permanent full-time job offer since then and had losses of over $300,000 in money from two inheritances after 1992 when DePaul and Illinois Skills Match were his principal job marketers and advisers.
   In 1988 J. Slovinec successfully taught for two semesters as Adjunct Professor of American National Government at South Suburban College in South Holland, Illinois.
   In 1992 J. Slovinec quit job under DePaul alumna Clerk of the Circuit Court Aurelia Pucinski because his highest salary was only $16,000 per year and after J. Slovinec sold an inherited house worth $231,000 he wanted to go to DePaul to get a higher-paying job.
   When Joseph Slovinec received a Master's of Arts in History from DePaul in 1996 after attendance from 1993 to 1996, he had a 3.5 of 4 GPA and little fault to find with it. Professor

*Courtesy copy: J. Slovinec*

Mockaitis taught J. Slovinec a class on Europe 1815-1919 and was his thesis advisor: Professor Mockaitis wrote President Clinton's staff to recommend J. Slovinec for a White House internship in 1995, and Mr. Padilla should talk to DePaul President Father Holtschneider and say J. Slovinec believes it is in DePaul's interest to hold responsible, or perhaps blame, former President Clinton for not developing J. Slovinec's historic talent better. Most of J. Slovinec's History grades were A-: from Professor Mockaitis, Professor Krokar who lectured on Byzantine history in Eastern Europe with interests similar to a talk of Pope Benedict XVI, and Professor Erlebacher who sponsored J. Slovinec's internship at the Chicago Historical Society on the papers of U.S. Senator Paul Douglas. In History, Joseph Slovinec received an A from Professor Garfield in a class on European colonial influences mostly in Asia and Africa, a B+ from Father Croak in U.S. History, and his lowest grade, B, in History of China. In June 1996 J. Slovinec graduated with A- on his thesis on President Theodore Roosevelt's peace policies in Europe and an Above Average grade on his oral exam: J. Slovinec's GPA 3.5 of 4 was even higher than his 1980 B.A. at Notre Dame, 3.41, before he went on to successfully complete a Master's Degree in International Affairs at the Ivy League Columbia University in New York. Aside from slowness in DePaul work on job interviews, where J. Slovinec was not offered one telephone job in Summer 1996 and was on a waiting list for several Chicago city jobs, there were signs of little wrong before the crisis of Winter 1997.

**4. FIRST SABOTAGING OF J. SLOVINEC'S CAREER BY DEPAUL FACULTY JANUARY-MARCH 1997: he believes this is due to desire to coverup association of Pauline Lipman in Foundations of Education and colleagues with convicted terrorist Professor Jose Solis Jordan of DePaul School of Education (arrested 1997); profit motives and corruption ties of DePaul College of Law with alumni Miriam Santos and John D'Arco; and uncertain links with corrupt defense contractors.**
A. After rejections from law school and graduate schools in 1995, J. Slovinec wrote to ask for another round of letters and to add Notre Dame and University of Chicago, near Senator Douglas' home and J. Slovinec's birthplace to the list for Ph.D. applications. J. Slovinec sent a reasonable note about this to Professor Mockaitis in January 1997: with no answers from Mockaitis, Father Thomas Croak, Chairman of DePaul Department of History became hostile to planned letters and intercepted the note with a hostile reply. From a legal point of view, and without a desire to waste time of the legal counsels, Joseph Slovinec had these **objections on legal grounds** to Father Croak's note where Joseph Slovinec did Father Croak a favor by postponing a threatened lawsuit until 2001, after the desirable period of less than 180 days to report a violation of the Family Educational Rights and Privacy Act:
1. **Rev. Croak made a false statement Joseph Slovinec refused to sign a waiver of a letter of recommendation for Professor Thomas Mockaitis to DePaul College of Law in 1995, which the law school rejected. Rev. Croak then wrote this was the reason Rev. Croak told everyone on the History faculty not to write letters of recommendation for Joseph Slovinec: this violated the federal Family Educational Rights and Privacy Act which schools are forbidden from requiring signatures on waivers of access which includes "services": services include writing letters.**
DePaul's own records proved Rev. Croak made an error or lied about this since Katie

2

Butwin showed J. Slovinec a copy of the envelope where J. Slovinec signed a waiver of access to the letter: Rev. Croak was expressing hostility towards J. Slovinec over the DePaul law school rejection although he sneakily manipulated J. Slovinec into reapplying and gaining an overturning of the rejection in 1997 which was allowed under DePaul rules. Croak was trying to gain financial profits and image benefits for DePaul.

2. **A note from Jackie Taylor, Rev. Croak's superior, indicated Rev. Croak was violating DePaul policies which allowed each professor to decide on writing own letter. Jackie Taylor was in laity and higher rank in Liberal Arts and Sciences.**

3. **Rev. Croak also falsely implied in January 1997 J. Slovinec was loitering around campus when J. Slovinec was not a student: this could have influenced American University security to feel hostile to J. Slovinec. DePaul's own records proved this was not true: and J. Slovinec was enrolled in two classes, T and L 405 with Prof. Murphy and T and L 453 with Prof. Kuzmic in January-March 1997.** DePaul's security had never objected to J. Slovinec's presence on the campus in Winter 1997. Above false statements were in violation of Catholic Church canon law against "falsity", and J. Slovinec could have demanded that Father Croak's Vincentian religious superior order him to correct the statements although with his high grades and hopes of getting a job from DePaul contacts, J. Slovinec had not.

4. **Rev. Croak misleadingly implied J. Slovinec was telling phony, exaggerated stories which were "delusional" about J. Slovinec's receiving a letter in response to his resume from President Clinton's National Security Adviser Sandy Berger, and about when J. Slovinec saw President Clinton at a Democratic Leadership Council meeting on or about December 11, 1996.** J. Slovinec believes it would have been better if additional progress was made on J. Slovinec's overtures to get President Clinton to pay attention to the thesis and the resume in J. Slovinec's job search on history: J. Slovinec did not understand Croak's motivations for criticizing it which violated fiduciary duty of Father Croak and DePaul to aid in J. Slovinec's job search. The letter from Sandy Berger was a real letter and Mr. Slovinec hoped to contact Mr. Berger in Washington although in early March the Internet reported Mr. Berger was on medical leave: it is important for Democrats and Republicans to remember Mr. Berger was a respected National Security Adviser who kept American at peace with only brief actions at Kosovo, and the Bush Administration is asked to agree it was wrong to falsely claim Mr. Slovinec did not receive this letter from Mr. Berger while a court reprimand to Mr. Berger is respected when Mr. Berger removed documents related to the 9/11 Commission. Joseph Slovinec was dissatisfied with lack of Clinton Administration responses to an earlier bombing at the World Trade Center on Joseph Slovinec's birthday, Feb. 26, 1993, which J. Slovinec now believes was caused by the anniversary of the U.S. military victory in Kuwait on Feb. 26-27, 1991, and a bombing near where J. Slovinec attended the Olympics in Atlanta and where the Bush Administration was more effective in convicting Eric Rudolph after Richard Jewell was blamed: however, J. Slovinec believes it was wrong for Bush Administration officials to blame Sandy Berger for lack of security before 9/11 which caused by employees of Central Intelligence Agency Director Tenet and Federal Aviation Administration. Mr. Slovinec is willing to discuss any contacts with Clinton Administration officials with the Bush Administration: former President Clinton might know about the thoughts and other controversies.

5. **Rev. Croak's real motivations were probably to cover up bad work habits of DePaul School of Education Assistant Deans Marianne Murphy and Charles Doyle who J. Slovinec suspects of unethical defense or intelligence links although evidence is uncertain.** Murphy did not do her work correctly and also leaned on colleagues to not write letters of recommendation for students she disliked: in T and L 405 she brought J. Slovinec and fellow students to Roosevelt High School in Chicago with gang and crime difficulties, where History teacher Mr. Malugen would not allow fellow DePaul student Renato and him to lecture to his class, and where J. Slovinec was only allowed to do small group talks on English-as-a-Second Language in classes of Ms. Hildebrand and Ms. Schwartz. Murphy did not visit any classroom where J. Slovinec was in at Roosevelt: she seemed to write letters of recommendation on basis of favoritism for other students, and then put a letter in J. Slovinec's file with petty criticisms when she was at fault for not bringing enough copies to class and which said J. Slovinec had "rambling thought patterns"; the reasons she gave for not writing a letter of recommendation. It was fascistic for her to know my thoughts without my consent under several federal regulations like for veterans 38 CFR 16.116, 40 CFR 26.116, and 45 CFR 690.117. Croak was making fun of a leftist Education Professor Kuzmic who taught a book from a nearly socialistic Professor Howard Zinn and Loewen's book "Lies My Teacher Told Me": Kuzmic also never wrote a letter of recommendation for J. Slovinec to complete student teaching and in 1999 admitted Murphy pressurized him not to talk to Mr. Slovinec since Mr. Slovinec had threatened legal proceedings: Professor Amira Proweller also did not write a letter although in 2004 she did not recall pressures from Murphy. J. Slovinec believes Murphy and Doyle were controlled by some evil group who did defense simulations including a conversation where Doyle said" "I went to the History Department, and you're persona non grata" there:  J. Slovinec alleges Doyle was using information from a recording of J. Slovinec's brain signals without J. Slovinec's consent where J. Slovinec had thought "persona non grata" a couple of days earlier. Doyle used insincere tactics by telling J. Slovinec he could still finish the teaching program if he was a Chicago substitute teacher in 1999-2000 and gained a favorable recommendation from a principal: A Chicago principal told J. Slovinec this was never done and a DePaul professor like Murphy was expected to write letters for student teaching. Maurice Bullett of DePaul prematurely scheduled a student teaching session for J. Slovinec at Marist High School where J. Slovinec graduated from in Spring 1997: the session could not occur because Murphy and Kuzmic did not write letters. The first hint of trouble came when Pauline Lipman wrote a letter to Charles Doyle that she had doubts about J. Slovinec going into teaching and he should try "another occupation": she was not specific: Lipman should have encouraged J. Slovinec to enter a corporation or bank training program then with positive recommendations from DePaul's Education faculty: Lipman is at University of Illinois at Chicago and J. Slovinec believes Lipman should reflect on her philosophy in his class: Lipman seemed like a darling of the socialist left in Spain in the 1930's sometimes with contrasts between wealthy schools like New Trier in Winnetka and poor schools like DuSable in Chicago; use of Mr. Wallis' book and contrasts between rich and poor along 16th St.. N.W. in Washington, D.C.: when J. Slovinec gave a verbal presentation with students Jim and Julie on Arthur Schlesinger's Multiculturalism, she seemed to give positive comments to all three and Lipman never discussed her reservations with J. Slovinec, only with Mr. Doyle.                P. 4

6. It is March 14 and J. Slovinec wants to finish p. 5 of this brief in a hurry since he needs to send page 7 to the Department of Justice. Both attorneys of DePaul and American U. are asked to respect my feelings your universities wronged me and caused hate incidents and feelings of age discrimination: I, Plaintiff J. Slovinec do not want DePaul and American staffs to talk to each other at this time, and ask you to direct any letters about common hate incidents to me and any relevant questions to U.S. Department of Justice which recently investigated ex-American U. President Benjamin Ladner. Mr. Padilla, I, J. Slovinec, welcome any ideas you might have on my job search, search for work in research and writing, and perhaps free classes at private expense which could involve a return to Chicago. I , J. Slovinec have been on food stamps since August 2005 and American U. Professor Ronald Fisher was not attentive to my professional development since I resided in Chicago 1989-2004: he mostly talks to United Nations-employee types. Plaintiff is sorry earlier pages were too long: however, for Mr. Khalid he clarifies that American U. used a dossier about J. Slovinec's past to create hate incidents with ineffective advice on J. Slovinec's job search. These included::a. Amanda Taylor of American imitated Rev. Croak by illegally refusing to release J. Slovinec's student file under FERPA: Taylor claimed J. Slovinec was not a student and violated an American U. regulation which demanded releasing the file because J. Slovinec was in attendance at American U. Spring 2005.b. AMANDA TAYLOR MADE HATEFUL COMMENTS ABOUT J. SLOVINEC'S LAW SCHOOL GRADES: THESE INCLUDED A SUSPICIOUS LOWERING OF J. SLOVINEC'S LEGAL WRITING GRADE BY PATRICK HUGHES WHO WAS GOOFING AROUND AND DID NOT SHOW UP AT CLASS WHEN HIS WIFE WAS PREGNANT: SHE USED THIS AS A REASON TO REJECT J. SLOVINEC'S APPLICATION FOR MASTER'S IN INTERNATIONAL SERVICE WITH FEDERAL FINANCIAL AID ELIGIBILITY.

c. When she refused to answer J. Slovinec's request for an emergency loan when American U. grades of A and B+ were high enough rather than directly refused, Ingrid Valentine connived with Housing and Dining Director Julie Weber to help Republicans lower J. Slovinec's credit rating with an unpaid bill and eviction: the eviction imitated J. Slovinec's eviction from 541 W. Oakdale, Chicago, Illinois when Clare Timm at DePaul Financial Aid Office refused J. Slovinec's request for a little more loan money: Mr. Padilla is informed Clare Timm might have been legitimately frustrated because DePaul was keeping J. Slovinec around for a 6th year of school (actually his 9th year of graduate school) with refusing to help him find full-time work.It became worse when American U. deliberately imitated past hostility. d. Ronald Fisher sent an e-mail about J. Slovinec's thoughts and refused to grade some of J. Slovinec's papers in imitation of Marianne Murphy's "rambling thought patterns" remark:J. Slovinec asked Mayor Fenty to investigate American U. Professor Ronald Fisher for harassment of the homeless when Fisher sent J. Slovinec a Labor Day 2005 e-mail trying to demand payment of J. Slovinec's bill in full and refusing to consider a tuition waiver when J. Slovinec had less than $60 in his bank accounts. Mr. Padilla is informed Father Holtschneider, who will receive most of these pages, might want to talk to D.C. Mayor Adrian Fenty on whether J. Slovinec can return to Chicago.

p. 5

P. 6 ATTORNEYS only

J. Slovinec believes American U. Public Safety Chief Michael McNair aided Ladner is making false accusations J.Slovinec disrupted a public meeting and McNair was influenced to imitate Father Croak's false charges J. Slovinec was not a student and was loitering; and also in 02 C 4124 false charges of George Ryan's aide Illinois Labor Relations Board Director Brian Reynolds that J. Slovinec inspected nursing homes after hours: all medical assistance visits were made during day, and one holiday visit after 5 P.M. by invitation to Clayton was brief and not an inspection (by a nurse of patient areas in U.S. H.H.S. records). MR. KHALID IS ALERTED FISHER MIGHT HAVE BLUNDERED BY ENCOURAGING J. SLOVINEC TO MOVE FROM ILLINOIS TO MARYLAND: THIS COULD NOT BE REVERSED AFTER J. SLOVINEC GOT MARYLAND ID CARD APRIL 27, 2005: we can talk about it sometime. Please go on to p. 7 Public Comments

PUBLIC COMMENTS TO U.S. DEPARTMENT OF JUSTICE    I, Plaintiff Joseph Slovinec, desire in an informal manner to discuss a letter from Chief David J. Palmer of the Employment Litigation Section of the U.S. Department of Justice and Reid Alan Cox of the same section: J. Slovinec respects the U.S. Department of Justice does not want to intervene against American University since the actions of the EEOC were not criminal nor a basis for Justice Dept. disciplining of EEOC. However, J. Slovinec observes the EEOC right-to-sue letter specifically said EEOC did not claim American U. was innocent of statutory violations, only that a black woman did not want to investigate. However, J. Slovinec cautions the U.S. Department of Justice he might write again to ask against violations of his rights under Welfare Reform Act including access to work training programs and he is disappointed U.S. Dept. of Justice has not yet investigated Montgomery County, Maryland in issues related to his U.S. Court of Appeals Case 06-7039 for a policy of refusing access to summer homeless shelters to evicted individuals who are not mentally ill or homeless when the state of Maryland receives homeless money from FEMA. Mr. Slovinec respects work of Mr. Gonzales as Attorney General on the basis of the record of integrity of U.S. Attorney in Illinois Patrick Fitzgerald who nonpartisanly prosecuted Republican ex-Governor George Ryan and Democratic City Clerk James Laski. However, the U.S. Dept. of Justice is expected to responsibly follow up on J. Slovinec's complaints on lack of information since May 20, 2005 on his appeal of U.S. District Court Case 02 C 4124, on the Dept. of Justice FOIA-related website, where J. Slovinec sued George Ryan's administration for an unjust layoff when J. Slovinec reported computer misuse. Since J. Slovinec was never offered full-time work since 2000, and used an inheritance to pay expenses, J. Slovinec resents his neo-Nazi stay at Community for Creative Nonviolence homeless shelter where African-American Mayor Anthony Williams was worse than Harold Washington in only offering J. Slovinec no-cash food stamps program with no job between September 2005 and February 2006, zero in his bank account in January 2006, and more Williams cash and favor for ex-offenders and foreign refugees: this could cause a request for a complaint to U.S. Senator Patrick Leahy and request for U.S. Department of Justice investigation of Appendix A, letter from Supreme Court Suter with erroneous claim U.S. Court of Appeals never heard Case 05-5372 and it seems U.S. Secretary of Education Margaret Spellings influenced a servile lackey like her protégé Claude Allen to steal a copy of Judge Kessler's August 19, 2005 ruling in Case 05-1690 with a delay of six months to get a ruling copy from the court until last week. J. Slovinec disagrees with Mr. Palmer's comments he should pay an attorney. Judge Kessler is notified a confidential note is attached only for the Department of Justice and Mr. Khalid which is not included in the public copy for the court file record..PROOF OF SERVICE: In U.S. mail to: DePaul Vice President and General Counsel Jose Padilla, 1 E. Jackson, Chicago, Illinois 60604And American U. Legal Counsel Hisham Khalid, 3201 New Mexico Av., Washington, D.C. 20016Joseph Slovinec, 425 2nd St., NW, Washington, DC 20016   March 14, 2007

*Joseph Slovinec*

7th

# SUPREME COURT OF THE UNITED STATES
## OFFICE OF THE CLERK
### WASHINGTON, DC 20543-0001

March 9, 2007

Joseph Slovinec
425 2nd St., N.W.
Washington, DC 20001

RE: Slovinec v. Muncie

Dear Mr. Slovinec:

The above-entitled petition for writ of certiorari was received March 8, 2007. The papers are returned for the following reason(s):

Your case must first be reviewed by a United States court of appeals or by the highest state court in which a decision could be had. 28 USC 1254 and 1257.

Sincerely,
William K. Suter, Clerk
By:
S. Elliott
(202) 479-3025

Enclosures

APPENDIX A,
06-455,
MARCH 14, 2007

*[Handwritten annotation: ACSP DG-455, MARW 14 FROM DEPAUL CASE FILE: U.S. COURT OF APPEALS, 05-5372, JAN/11/2006, J Slovinec — EXHIBIT B]*

# THE WHITE HOUSE
## WASHINGTON

January 3, 1997

Dear Mr. Slovinec:

Thank you for your letter. I appreciate your interest in joining the Administration and am impressed by your record.

Unfortunately, there are no vacancies on my staff for position that are commensurate with your considerable talents and experience. I will, of course, keep your resume on file.

I wish you every success.

Sincerely,

Samuel R. Berger

Mr. Joseph Slovinec
541 W. Oakdale Avenue
Chicago, IL  60657

54