**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOSEPH SLOVINEC,           )
                             )
           Plaintiff,     )
                             )
   v.                   )     Civil Action No. 06-455 (GK)
                             )
AMERICAN UNIVERSITY,     )
                             )
           Defendant.     )

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Defendant's motion for summary judgment. Having considered the motion, Plaintiff's opposition, and the entire record of this case, the Court will grant summary judgment for Defendant.

## I.    BACKGROUND

According to his resume, Plaintiff obtained a Bachelor of Arts degree from the University of Notre Dame in 1980, where he majored in Government and International Studies. Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("AU Mot."), Ex. 27 (Plaintiff's Resume) at 1. He obtained a Master's Degree in International Affairs from Columbia University in 1982 and a Master of Arts in History from DePaul University in 1996. *Id.*

The resume sets forth Plaintiff's professional objective,

1

which states:

> Search includes new entry-level positions in
> writing, editing, education[,] communications,
> public administration[,] business, or real
> estate development.

*Id.* In a section titled "Highlights of Qualifications," Plaintiff

lists the following:

> Research, writing, and editing in history,
> international affairs, and public relations.
> Public Administration managerial skills
> including auditing and verification of
> eligibility for Medicaid.

*Id.* As a Social Services Career Trainee (July 1999 - June 2000),

Plaintiff processed patient admissions and discharges and verified

eligibility for Medicaid.    *Id.*    His professional experience

included work as a Real Estate Sales Associate (1998 - 2003), a

Canvasser for the United States Census Bureau (1980, 1990, and

2000), an Intern with the Archives and Manuscript Section of the

Chicago Historical Society (1994), an Adjunct Professor at South

Suburban College (1988), and a Clerk at the Circuit Court of Cook

County, Illinois (1986 - 1992).    *Id.*    His resume lists various

research and writing accomplishments in the fields of foreign

affairs, national affairs, and public relations.    *Id.* at 2.

Plaintiff alleges that, in early 2005, he applied for the

following 18 positions at American University ("Defendant" or "the

University"):

2

- Communications Specialist (Position #1402) (Department of Safety & Security)
- Associate Director, Center for Democracy, (Position #4299) (Department of International Affairs)
- Staff Assistant (Position #4490) (Department of International Affairs)
- Producer (Position #5396) (WAMU 88.5)
- Administrative Assistant (Position #1717) (School of Communication)
- Document & Imaging Specialist (Position #1895)[1] (Office of Enrollment)
- Program Coordinator (Position #4928) (School of Public Affairs)
- Grant & Contract Manager (Position #3617) (Office of Sponsored Programs)
- Research Assistant (Position #2875)[2] (School of Public Affairs)
- Administrative Assistant (Position #4041) (Washington Semester Program)
- Lead Researcher (Position #5412) (School of Education)
- Technology Specialist (Position #5422) (School of Education)
- Academic Advisor (Position #1058) (School of International Services)
- Customer Relations Representative (Position #1877) (Enrollment Services)
- Administrative Assistant (Position #3673) (School of Public Affairs)
- Program Coordinator (Position #5473) (GLBTA Resource Center)
- Project Coordinator (Position #5470) (Center for Democracy & Elections)
- Graduate Advising Assistant (Position #1713) (School of International Services)

AU Mot., Ex. 8 (listing positions); *see* Complaint ("Compl."),

---

[1]     The position number appears elsewhere in the record as 1897. *See* AU Mot., Ex. 8.

[2]     The position number appears elsewhere as 2914. *See* AU Mot., Ex. 17 (position description for Research Assistant, School of Public Affairs).

Attach. (Charge of Discrimination dated June 24, 2005). He alleges that, in spite of his qualifications, the University neither interviewed nor selected him for any of the positions because of his age (then 47 years). Compl., Attach. (Charge of Discrimination). He brings this action against the University under the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 621 *et seq*.

## II.    DISCUSSION

### A.    Summary Judgment Standard

The Court grants summary judgment for a Defendant "only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits . . . show that, first, 'there is no genuine issue as to any material fact' and, second, 'the moving party is entitled to judgment as a matter of law.'" *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). In making this determination, the Court views the evidence in the light most favorable to the Plaintiff, and draws all reasonable inferences in his favor. *Id.* A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it affects the outcome of the action under controlling law. *See id.* The Court neither makes credibility decisions nor weighs evidence. *Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If there are no genuine issues of material fact in dispute, a defendant is entitled to judgment as a matter of law if the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "may not rely on unsubstantiated, conclusory allegations to generate 'specific facts showing that there is a genuine issue for trial.'" *Whitener v. England*, No. 04-0273, 2006 WL 3755220, at *3 (D.D.C. Dec. 19, 2006) (quoting Fed. R. Civ. P. 56(e)); *Celotex Corp. v. Catrett*, 471 U.S. at 323-24. If evidence is "merely colorable" or "not significantly probative," the Court may grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50.

### B.   *Burden-Shifting Analysis Under McDonnell Douglas Corp. v. Green*

In this case, Plaintiff has produced no direct evidence of Defendant's discrimination against him because of his age. In an ADEA case where there is no direct evidence, the Court applies the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1976). *See Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001), *cert. denied*, 536 U.S. 958 (2002); *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999).

To make out a prima facie case of age discrimination, Plaintiff "must demonstrate facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982) (internal quotation marks omitted). A plaintiff creates this inference by showing that "he (1) belongs to the statutorily protected age group (40-70), (2) was qualified for the position, [and] (3) was not hired." *Id.* at 857 (citations omitted); *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004).

In addition, a plaintiff must show that the employer continued to seek applicants from persons with his qualifications after he was rejected. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; *Carter v. George Washington Univ.* 387 F.3d 872, 878 (D.C. Cir. 2004). However, a plaintiff "need not demonstrate that [he] was replaced by a person outside [his] protected class in order to carry [his] burden of establishing a prima facie case under *McDonnell Douglas*." *Stella v. Minetta*, 284 F.3d 135, 146 (D.C. Cir. 2002); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant, which "has the burden of producing evidence tending to show that [plaintiff] was denied employment for a legitimate, nondiscriminatory reason." *Cuddy v. Carmen*, 694 F.2d

6

at 857. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). "[D]efendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507 (emphasis in original) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-555 & n.8 (1981)).

If the defendant meets its burden of production, "the presumption raised by the prima facie case is rebutted." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 255. "At this stage, the question of whether the proffered non-discriminatory explanation was pretextual 'merges with [plaintiff's] ultimate burden of persuading the [C]ourt that [he] has been the victim of intentional discrimination.'" *Simpson v. Leavitt*, 437 F. Supp. 2d 95, 101 (D.D.C. 2006) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 256). The plaintiff "must prove by a preponderance of the evidence that age made a difference in the employer's decision not to hire him." *Cuddy v. Carmen*, 694 F.2d at 857-58. He may do so by relying on evidence establishing his prima facie case, evidence attacking the employer's proffered

7

explanation, and any other evidence available to him.  *Holcomb v. Powell*, 433 F.3d at 897; *see Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

### C.  The Court Treats Defendant's Motion as Conceded In Part

Because Plaintiff is proceeding *pro se*, the Court construes his papers liberally and holds him to less stringent pleading standards than those applied to lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, his *pro se* status does not relieve him of his obligation to comply with the Federal Rules of Civil Procedure and the local rules of this Court.  *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

Local Civil Rule 7(b) requires that a party opposing a motion serve and file an opposition at the time directed by the Court; if he fails to do so, "the court may treat the motion as conceded." LCvR 7(b); *see Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997) (treating plaintiff's summary judgment motion as conceded because defendant filed its opposition late). Similarly, if "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citations omitted); *Stevenson v. Cox*, 223

F. Supp. 2d 119, 121 (D.D.C. 2002).   "Where the district court relies on the absence of a response as a basis for treating a motion as conceded, [the District of Columbia Circuit] honor[s] its enforcement" of the local rule.   *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997); *see Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004).

Plaintiff's opposition fails to address Defendant's arguments with respect to the following nine of the 18 positions for which he applied:

- Program Coordinator (Position #4928) (School of Public Affairs)
- Research Assistant (Position #2875) (School of Public Affairs)
- Technology Specialist (Position #5422) (School of Education)
- Communications Specialist (Position #1402) (Department of Safety & Security)
- Document & Imaging Specialist (Position #1895) (Office of Enrollment)
- Administrative Assistant (Position #3673) (School of Public Affairs)
- Program Coordinator (Position #5473) (GLBTA Resource Center)
- Academic Advisor (Position #1058) (School of International Services)
- Project Coordinator (Position #5470) (Center for Democracy & Elections)

*See generally* Formal Response in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n").  With respect to Defendant's hiring decisions for these nine positions, the Court treats its motion as conceded.

*D. Plaintiff's Prima Facie Case*
*of Age Discrimination*

The parties do not dispute that Plaintiff is a member of a protected class and that he suffered an adverse employment action in that he was neither interviewed nor selected for any of 18 positions for which he applied.  The dispute generally centers on the second element of the prima facie case: whether Plaintiff was a qualified applicant.

Defendant argues that Plaintiff fails to make out a prima facie case of age discrimination with respect to five of the nine positions in dispute because he did not meet the positions' minimum requirements.  Even if he were qualified, Defendant argues that it had legitimate, non-discriminatory reasons for each of these seven hiring decisions.  With respect to the remaining four positions, Defendant appears to  concede that Plaintiff makes out a prima facie case, but argues not only that it articulated a legitimate non-discriminatory reason for each hiring decision, but also that Plaintiff failed to meet his ultimate burden on summary judgment. In its view, in no event can Plaintiff show as to any of the positions "that a reasonable jury could conclude from all of the evidence that [any] adverse decision was made for a discriminatory reason."  *Lathram v. Snow,* 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *Aka v. Wash. Hosp. Ctr.* 156 F.3d at 1290).

Plaintiff's qualifications are relevant to both parties' evidentiary burdens. The Court proceeds by considering each position in turn. In doing so, the Court is mindful that it is not a "super-personnel department that reexamines an entity's business decision[s]," and instead "defer[s] to the [employer's] decision of what nondiscriminatory qualities it will seek in filling [a] position." *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)) (internal quotation marks omitted). A prospective employer "has discretion to choose among qualified candidates for a position, and absent a demonstrably discriminatory motive, courts lack the authority to second-guess what nondiscriminatory qualities . . . it will seek in filling a position." *McIntyre v. Peters,* 460 F. Supp. 2d 125, 136 (D.D.C. 2006); *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996); *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982).

1. <u>Associate Director, Center for Democracy and Election Management (Position #4299)</u>

The Center for Democracy and Election Management "teaches courses on democracy and election management, conducts research and advises election commissions, administrators of elections, [and] legislators." AU Mot., Ex. 10 (Position Information Form) at 1. Its Associate Director, among other functions, designs and develops

the new Center's programs, develops lecture series, manages and evaluates programs on democracy and elections, sponsors research on election management, works with a grant writer to develop and market research proposals, manages the budget and other resources in accordance with University policy, and coordinates activities with other University faculty and departments. *Id.* A candidate for this position must have a Master's degree in Political Science, International Affairs, or a related discipline; a Ph.D. in one of those fields is preferred. *Id.* at 2. Two to four years' experience on elections or democracy-related work internationally and in the United States is required; four to six years' experience is preferred. *Id.* The candidate must have "international experience" and also must be proficient in a foreign language; "considerable international experience" and knowledge of more than one foreign language is preferred. *Id.*

Robert Pastor, Director of the Center for Democracy and Election Management and Vice President of International Affairs, initiated the hiring process for the Center's Associate Director in January 2005 and had the position posted on the University's human resources website. AU Mot., Ex. 10 (Pastor Aff.) ¶¶ 2, 4, 8. On receipt of all applicants' resumes, a group in Dr. Pastor's office "eliminate[d] unqualified candidates," took "a closer look . . . at remaining resumes to select candidates to be interviewed," and

requested writing samples from these candidates. *Id.* ¶ 8. The entire Office of International Affairs staff interviewed the candidates and "rated [each on his or her] experience, content experience [sic], educational background, communication ability (both written and spoken) and fit with [the] office."[3] *Id.* Before making a final selection, the staff met and "discussed the strengths and weaknesses of each candidate." *Id.*

Although Dr. Pastor did not recall Plaintiff's resume, he reviewed it in preparing his affidavit. Pastor Aff. ¶ 7. In his view, Plaintiff did not meet the requirements for the position because he did not "possess a Ph.D. in political science, international affairs, or a related discipline with experience in democracy-support work or elections internationally as well as in the United States." *Id.*

Plaintiff counters by noting his experience for "5 summers plus 12 years of work on vote totals as Democratic precinct captain in Illinois." Pl.'s Opp'n at 2; *see* AU Mot., Ex. 28 (transcript excerpt) at 77:11-13. In Plaintiff's view, he meets the position requirements, and claims that Defendant "was in error" when Dr. Pastor deemed Plaintiff's qualifications inadequate. *Id.* at 2. However, none of the election-related experience to which Plaintiff

---

[3]    The record does not state the number of candidates interviewed for this position. *See* AU Mot., Ex. 8.

refers appears in his resume, and there is no evidence in the record to substantiate these facts.

Moreover, Plaintiff's assessment of his own qualifications is not relevant. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 7 (D.D.C. 2000) (plaintiff "cannot establish pretext simply based on her own subjective assessment of her own performance"), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002); *Smith v. Chamber of Commerce of the United States*, 645 F. Supp. 604, 608 (D.D.C. 1986) (noting that "plaintiff's perception of himself, and of his work performance, is not relevant"). Rather, Dr. Pastor's assessment of Plaintiff's qualifications is most decidedly relevant, as he is the person who made the ultimate hiring decision for the Associate Director of the Center for Democracy and Election Management. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d at 7; Pastor Aff. ¶ 3.

For these reasons, the Court concludes that Plaintiff cannot make out a prima facie case with respect to his non-selection for this position. He "has failed to show that [he] meets the qualifications requirement of the *McDonnell Douglas* prima facie case." *Carter v. George Washington Univ.*, 387 F.3d at 883.

Even if Plaintiff had presented a prima facie case, Defendant puts forth legitimate, non-discriminatory reasons for its hiring decision. The selected candidate holds a Doctorate and Master's

14

degree in Russian and East European Studies from Oxford University and a Bachelor's degree in International Relations from Tufts University.[4]    AU Mot., Ex. 10 (redacted resume) at 4.    The candidate speaks Italian and has a "working knowledge" of Russian. *Id.* Prior work experience includes positions as an Assistant Program Officer, Program Officer, Deputy Director for Eastern Europe, Program Director, and Consultant with the International Republican Institute. *Id.* at 1. This candidate brings "over ten years of experience in democracy programs, including in elections." Pastor Aff. ¶ 9. In addition, the candidate has "successfully demonstrated the ability to not only fund-raise, but also manage multi-million dollar budgets." *Id.* Finally, the candidate has strong academic credentials and managerial skills. *Id.*

In sum, Plaintiff has offered no evidence tending to show that Defendant's proffered reasons are a pretext for discrimination based on his age. Viewing the evidence in the light most favorable to Plaintiff, the Court must conclude that Plaintiff fails to meet his burden of persuasion; he cannot show that he has been a victim of age discrimination.

2.   Producer, WAMU-FM (Position #5396)

WAMU's Outreach Producer works with the Senior Talk Show Host, Diane Rehm, to "create[] topical issue-oriented daily live

---

[4]    The selected candidate was 39 years old.  *See* AU Mot., Ex. 8.

interview/listener call-in programs," and markets The Diane Rehm Show to other media organizations in collaboration with the marketing departments of WAMU and [National Public Radio]" with an eye towards increasing national carriage. AU Mot., Ex. 12 (Position Description) at 1, 3.

After collaborating with the Senior Host to select program topics, the Producer "must work independently with little supervision to choose the proper guests and schedule the segment." *Id.* at 1. In carrying out these duties, the Outreach Producer is expected to review newspapers, academic papers, book releases and other materials, to prepare background materials to aid the Host's preparation for each segment, to pre-interview guests for suitability for broadcast, to write scripts, to prepare suggested questions, and to distribute information about daily programming internally to the public information department and externally to network stations. *Id.* at 2. The Producer is responsible for more than 100 segments each year. *Id.*

The minimum qualifications for the position include a Bachelor's degree or a combination of education and experience demonstrating skills necessary for the job, two years' experience in journalism, news or publishing, strong oral and written communications skills, skill in working with creative individuals, and experience working under the constant pressure of deadlines.

16

*Id.* Preferred qualifications include knowledge of radio production techniques, talk show experience, and experience with computer-based research tools. *Id.*

Diane Rehm, Executive Producer/Host of The Diane Rehm Show, initiated the hiring process for an Outreach Producer in January 2005. AU Mot., Ex. 12 (Rehm Aff.) ¶¶ 1-2, 4. Ms. Rehm recieved seven resumes for the position. *Id.* ¶ 5. She and the other producers reviewed the resumes "seeking an individual who had background and experience in journalism and news gathering and writing." *Id.* ¶ 8.

Although Ms. Rehm did not recall Plaintiff's resume, she reviewed it in preparing her affidavit. Rehm Aff. ¶ 7. In her opinion, Plaintiff would not have been a proper fit for the position "because he had no background in journalism or radio broadcasting." *Id.*

Plaintiff counters by referencing a "Columbia internship on news media at Council of International and Public Affairs and Presidential election issues work: producer was qualified like Educational Technology Specialist." Pl.'s Opp'n at 2. However, this internship does not appear in his resume, *see* AU Mot., Ex. 27, and there is no evidence in the record to substantiate these facts.

Ms. Rehm and the producers interviewed two candidates for this position, and took into account each candidate's "personality,

congeniality, articulateness, and demonstrated writing ability, as well as marketing experience." Rehm Aff. ¶ 8. The selected candidate "was a clear choice for all [] involved in the interview and selection process," given his "prior talk show experience, as well as demonstrated marketing and journalism expertise."[5] *Id.* ¶ 9.

Without a background in journalism or radio broadcasting, Plaintiff did not meet the minimum requirements for this position, and, thus, failed to make out a prima facie case. Even if he had, Defendant has put forth legitimate, non-discriminatory reasons for its decision to hire another candidate, namely that candidate's talk show experience. He spent one year, from May 2001 to May 2002, as a volunteer for The Diane Rehm Show; he had been a part-time volunteer producer of The Diane Rehm Show from May to October 2002, and became one of five full-time producers of the show in October 2002. AU Mot., Ex. 10 (redacted resume) at 1. Prior to joining WAMU, the selected candidate had been a producer and host of an hour-long weekly program on public access radio from August 2001 to May 2002, and had been a temporary producer from July 2002 to October 2002 of a nationally syndicated talk-radio program hosted by Kojo Nnamdi and distributed by National Public Radio. *Id.* Plaintiff presented no evidence from which a reasonable jury

---

[5]    The selected candidate was 40 years old. AU Mot., Ex. 8.

18

could conclude that Defendant's explanation is a pretext for age discrimination.  Again, Plaintiff fails to meet his burden of persuasion.

    3.   <u>Grant and Contract Manager (Position #3617)</u>

The Grant and Contract Manager "serves the Washington College of Law."  AU Mot., Ex. 16 (Kirby Aff.) ¶ 9.  The portfolio "includes work with international programs and private sponsor organizations."  *Id.*  The Grant and Contract Manager "provides technical, budgetary and consultative service to faculty and administrators seeking support for research, programmatic initiatives, technical assistance and training programs from government agencies, corporations, and private foundations."  *Id.*, Ex. 16 (Position Questionnaire) at 1.  The Manager "is responsible for ensuring that programs adhere to the terms and conditions specified in grants and contracts."  *Id.*  At a minimum, a candidate for this position must have a Master's degree "or 5 years experience in a cradle to grave contract management function," and two to three years' experience in proposal development and project administration.  *Id.* at 3.  It is preferred that a candidate have "knowledge of accounting, contracts, and related legal grant issues."  *Id.*

Catherine Kirby, Director of the Office of Sponsored Programs, initiated the hiring process for the Grant and Contract Manager

position in November 2004 by posting the position internally at the
University, on a listserv for research administrators, and in the
Washington Post. Kirby Aff. ¶¶ 1, 4. Of the 25 resumes received,
"candidates were evaluated using the minimum qualifications as a
baseline." *Id.* ¶¶ 5, 8. Office of Sponsored Programs staff
initially interviewed five candidates, each of whom had at least a
Master's degree and previous experience in grant and contracts
administration. *Id.* ¶ 8. Of these five candidates, three were
invited for a second interview. *Id.* One of these three candidates
had a Ph.D. in Public Administration, one had attended law school
for one year, and one was preparing for the Certified Public
Accountants' exam. *Id.*

Although Ms. Kirby did not recall receiving Plaintiff's
resume, she reviewed it in preparing her affidavit. Kirby Aff. ¶
7. It reflected no education or expertise in proposal development
and project management for grants, and did not suggest that
Plaintiff had preferred skills such as course work in grant and
contract law, or knowledge of accounting, contracts, or legal
issues related to grants. *Id.* Plaintiff himself admitted that he
had no experience in administering grants. AU Mot., Ex. 29
(transcript excerpt) at 92:7-9.

The Court concludes that Plaintiff fails to make out a prima
facie case of age discrimination because he does not show that he

met the minimum qualifications for the Grant and Contract Manager position.   Although he had a Master's degree, he lacked the required two to three years' experience in proposal development and project management for grants.   *See* Kirby Aff. ¶ 7.   Nor does Plaintiff show that he had the preferred skills for the position. He neither had taken courses in grant management, nor had knowledge of contracts, accounting, and grant-related legal issues.   *See id.*

Even if Plaintiff had presented a prima facie case, Defendant articulated legitimate, nondiscriminatory reasons for its hiring decisions.   The first selected candidate "had over ten years experience in sponsored programs administration, [] a wide range of experience in educational and research administration which included proposal development, donor reporting, and grant administration."   Kirby Aff. ¶ 9.   The candidate declined Defendant's offer and instead took a job with the World Bank.   *Id.*

Defendant reopened its search and hired another candidate in June 2005.[6]   *Id.*   The second selected candidate obtained a Bachelor's degree from the University of Kansas and a Master's degree from that same institution in Soviet and East European Studies.[7]  AU Mot., Ex. 12 (redacted Application for Employment at 1).   Her foreign language skills included Russian, Polish and

---

[6]      The record provides no further information on the reopened search process.

[7]      The second selected candidate was 27 years old.  AU Mot., Ex. 8.

Ukranian, in addition to elementary German and Spanish. *Id.* at 3. She also had "four years experience with grants and contracts," acquired both "in the university environment doing the same type of work as the AU grant and contract managers and in working for non-profit organizations in the area of grants and contracts." Kirby Aff. ¶ 9. As a Grants Coordinator at Washington University, she "assisted [] faculty with [] budget and proposal development and was involved in the management of their grants and contracts." *Id.* As a grant specialist for non-profit organizations, the selected candidate "develop[ed] budgets and proposals for corporate, federal, and private sponsors, [and] managed the subsequent grants and contracts and coordinated progress reports." *Id.*

In his opposition, Plaintiff merely mentions the position number and title of the Grant and Contract Manager position, *see* Pl.'s Opp'n at 2, without any discussion or argument, and without pointing to any evidence in the record tending to show that Defendant's proffered reasons were pretext for age discrimination He utterly fails to meet his burden of persuasion.

4.  Shared Goals Lead Researcher, School of Education (Position #5412)

The Shared Goals Lead Researcher in the University's School of Education "work[s] to assure that the objectives of the *Shared Goals* grant from the Washington, DC State Education Agency are

met." AU Mot., Ex. 19 (Position Description) at 1.  To that end, the Researcher is responsible for refining the research design, developing data collection instruments, overseeing database development and data analysis, and writing project reports for the *Shared Goals* grant. *Id.*  The Researcher must have a Ph.D. or equivalent graduate coursework or experience beyond a Master's degree, must have skills "in questionnaire design, qualitative and quantitative research, and data analysis," and must have strong writing and communication skills. *Id.* at 4.  "K-12 experience is preferred," and an "understanding of teacher licensure systems is also desired." *Id.*

Sara Irvine Belson, Dean of American University's School of Education, Teaching and Health, initiated the hiring process for this Lead Researcher position in late January 2005.  AU Mot., Ex. 19 (Belson Aff.) ¶¶ 1-2, 4.  The position was posted in the Washington Post and on the University's website in February 2005. *Id.* ¶ 8.  Ms. Belson received 15 resumes; she and a colleague reviewed the resumes and interviewed the three top candidates in March 2005. *Id.*

Although Ms. Belson did not recall Plaintiff's resume, she reviewed it in preparing her affidavit.  Belson Aff. ¶ 7.  In order to perform the functions of a Lead Researcher, a candidate must have "background[] including research and training in quantitative

23

research and the use of statistical analysis software." *Id.* Based on this statement, Ms. Belson clearly concluded that Plaintiff lacked such a background and therefore did not meet the minimum qualifications for the position. *See id.*

Plaintiff has neither a Ph.D. nor equivalent graduate coursework or experience beyond a Master's degree. For this reason, Plaintiff cannot show that he was a qualified candidate for the position and, thus, he cannot make out a prima face of age discrimination.

Even if Plaintiff had made out a prima facie case, Defendant stated legitimate, non-discriminatory reasons for its hiring decision. The selected candidate had a Ph.D. in Sociology and had "extensive experience and training in data analysis and experience working with data collection instruments, statistical analysis software, and with running focus groups and interviews."[8] Belson Aff. ¶ 9. The candidate also had a "background in Teacher Education and Educational Policy." *Id.* Although Plaintiff mentioned in his opposition that he "had coursework beyond [a] Master's [degree]," Pl.'s Opp'n at 2, he did not show that that coursework was in any way related to his qualifications for the Lead Researcher position. Plaintiff neither articulated a substantive argument nor pointed to facts in the record from which

---

[8]    The selected candidate was 33 years old.  AU Mot., Ex. 8.

24

a reasonable jury could conclude that Defendant's stated reasons were a pretext for age discrimination. *See id*. Thus, Plaintiff fails to meet his ultimate burden of persuasion.

5. <u>Customer Relations Representative, Enrollment Service (Position #1877)</u>

This Customer Relations Representative is "the public's initial contact with American University," and, among other things, acts as "the first level of problem resolution" in response to inquires and complaints from current and prospective graduate and undergraduate students regarding admissions and financial aid. AU Mot., Ex. 22 (Position Description) at 1. The representative performs other administrative functions, such as supervising part-time and work-study students, setting their schedules to ensure proper coverage of phones, and serving as a liaison between the Office of Enrollment Service and the Offices of Financial Aid, Undergraduate Admissions, Graduate and International Admissions, and Special Programs. *Id.* at 2. A candidate must have a high school diploma or the equivalent; a Bachelor's degree or comparable work experience is preferred. *Id.* In addition, a candidate must have "[t]wo years leadership, computer, and office experience," must be able "to work in both a detail oriented and flexible environment," and must have "[e]xcellent verbal communications skills." *Id.*

Megan Carroll, Supervisor of Customer Relations, initiated the hiring process for this position in March 2005. AU Mot., Ex. 22 (Carroll Aff.) ¶¶ 1-2, 4. She received 59 resumes and reviewed them "looking for candidates with customer service (i.e. interaction with the public), and university admissions/enrollment services experience."[9] *Id.* ¶ 9.

Although Ms. Carroll did not recall Plaintiff's resume, she reviewed it in preparing her affidavit. Carroll Aff. ¶ 7. She concluded that Plaintiff "would not be a proper fit for this position because he has no relevant customer relations experience." *Id.* In addition, she found that the position had none of the components set forth in the professional objectives section of Plaintiff's resume. *Id.* The Customer Relations Representative position would not serve Plaintiff's interest in "attainment of new entry level positions in writing, editing, education[,] communications, public administration[,] business, or real estate development." *Id.* Further, Plaintiff's resume indicates "no experience in higher education admissions or enrollment services," qualifications which the University preferred in a candidate for this position. *Id.* ¶ 8.

Plaintiff counters by asserting that it was "unlawful to hire

---

[9]    The record contains no further information about the hiring process for this position.

a younger employee with less than 'two years office experience'"
and "one semester as an intern" when Plaintiff "had more than seven
years of office experience."   Pl.'s Opp'n at 7.   The office
experience to which Plaintiff referred is not clear from his
Opposition, and he points to no evidence in the record to support
his conclusory response.

The Court concludes that Plaintiff fails to make out a prima
facie case of age discrimination.   Notwithstanding his educational
background and any office experience he may have, Plaintiff does
not establish that he has the requisite leadership and computer
experience.

Even if Plaintiff had presented a prima facie case, Defendant
states legitimate, non-discriminatory reasons for its hiring
decision.   Ms. Carroll selected a candidate who is a graduate of
American University.[10]   Carroll Aff. ¶ 10.   He had experience not
only "in customer relations work in several prior jobs," but also
in the Office of Enrollment Service where he "had performed
exceptionally well" as an intern.   *Id.*   According to his resume,
the selected candidate had some management experience as a crew
leader for a company in Massachusetts and had held at least one
position, as a representative of the Massachusetts Public Interest
Research Group, requiring contact with the public.   AU Mot., Ex. 22

---

[10]    The selected candidate was 23 years old.   AU Mot., Ex. 8.

(redacted resume).  As a cook at The Malt Shop, where he "[s]ingle handedly prepared and cooked food," the candidate appeared to have performed independently with minimal supervision.  *Id.*

Plaintiff offers no evidence from which a trier of fact reasonably could conclude that Defendant's proffered explanation is a pretext for discrimination based on his age.

6.    Administrative  Assistant,  School  of  Communication
       (Position #1717)

The Administrative Assistant performs duties pertaining to the recruitment, admissions, and matriculation of graduate students at the University's School of Communication.  AU Mot., Ex. 13 (Position Description) at 1.  The Assistant also engages in "some marketing activities[,] event planning [and] recruiting fairs[.]" *Id.*  Among other functions, the Assistant maintains graduate applicant and student files, responds to walk-in, telephone, and e-mail inquiries, produces a graduate student directory, and provides general administrative support.  *Id.* at 2.  The position requires a high school diploma or equivalent, substantial administrative support experience, and excellent written and oral communication skills.  *Id.*  A Bachelor's degree is preferred.  *Id.* at 3.

Merry Mendelson, Assistant Dean for Students Services, School of Communication, received 15 resumes for this position and hired

28

a candidate in March 2005.[11]  AU Mot., Ex. 13 (Mendelson Aff.) ¶¶
1-5.

Although Ms. Mendelson did not recall Plaintiff's resume, she
reviewed it in preparing her affidavit.  Mendelson Aff. ¶¶ 6-7.
She concluded that Plaintiff "would not be a proper fit for this
position because he did not have the relevant administrative
support experience needed for the job."  *Id.* ¶ 7.  In addition, she
would not have considered Plaintiff because none of the position's
functions was consistent with the professional objectives stated on
his resume.  *Id.*

Plaintiff asserts that Defendant's stated reasons for its
hiring decision "sounded phony," and that Defendant wrongly
disregarded his years of "administrative support" work for
"Columbia, county, and statte [sic] government."  Pl.'s Opp'n at 2.
In his view, "it is a pretext to hide age discrimination to say the
hired applicant's work [in her former position] at Merrill Lynch
was administrative and [Plaintiff's] work in Cook County government
and Illinois state government was not administrative support."  *Id.*
at 5.

With respect to this position, the Court concludes that
Plaintiff does make out a prima facie case of discrimination.

---

[11]    The record contains no further information about the hiring process for
this position.

Specifically, his resume reflects that he holds a Master's degree and thus exceeds both the minimum and preferred educational requirements for the position.  His resume also suggests that he has administrative support experience.

However, Defendant articulates legitimate, non-discriminatory reasons for its hiring decision, and thus meets its burden of production.  The selected candidate worked as a Senior Registered Client Associate for Merrill Lynch for five years.[12]  AU Mot., Ex. 13 (redacted resume) at 1.  In this position, she "[s]erved as [the] first point of contact for clients on the telephone, in person, and at events."  *Id.*  In that role she also researched client requests, drafted written correspondence, supervised interns, and served as a mentor for new client associates, among other duties.  *Id.*  She spent the prior two years as a Caterer and Account Manager at Catholic University and assisted in the start-up of a catering business.  *Id.*  Other experience included a position as a guest lecturer at St. Augustine University of Tanzania and volunteer work with students in District of Columbia Public Schools and as a youth leader at two local churches.  *Id.* at 1-2.  The selected candidate obtained a Bachelor of Arts degree at McGill University and has intermediate knowledge of Swahili, Italian and French.  *Id.* at 2.

---

[12]    The selected candidate was 33 years old.  AU Mot., Ex. 8.

In addition to the selected candidate's administrative experience in client relations as "the first point of contact for clients on the telephone, in person and at events," Ms. Mendelson considered her "event planning experience, some of which was obtained at another university . . . an important factor" in her hiring decision. Mendelson Aff. ¶ 10. The position required "some marketing activities – event planning (Open Houses), recruiting fairs [and an] electronic newsletter," *id.* ¶ 8, and the selected candidate's event planning experience "evidenced her ability to help with the School's event planning functions." *Id.* ¶ 10.

Plaintiff's conclusory, self-serving statements pertaining to Defendant's "phony" explanation offer no support for an argument that Plaintiff's age made a difference in Defendant's decision not to hire him. In short, Plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that Defendant discriminated on the basis of age.

7.    <u>Staff Assistant, Offices of International Affairs and Development (Position #4490)</u>

The Staff Assistant "provide[s] administrative support as a receptionist to the Office of International Affairs and the Office of Development." AU Mot., Ex. 11 (Position Questionnaire) at 1. The Assistant also provides research and operational support to more than seven individuals, including the Vice Presidents of

International Affairs and of Development. *Id.* at 1-2. As the first point of contact for persons contacting these offices by telephone or in person, a candidate for this position must have "[p]rofessional and polished communications skills, both written and oral." *Id.* at 2. In addition, a candidate must have a Bachelor's degree or equivalent. *Id.* Defendant's preference is that a candidate have three to five years' experience as an administrative assistant and experience as a receptionist. *Id.* Knowledge of French and Spanish also is preferred, as is familiarity with American University or experience in higher education. *Id.* The position requires "[s]uperior word processing, spelling and proofreading skills[,] and an ability to manage a wide variety of projects [is] highly desired." *Id.* Also required are "exceptional organizational and customer service skills." *Id.*

Robert Pastor, Vice President of International Affairs, initiated the hiring process in January 2005 by having the position posted on the University's human resource website. AU Mot., Ex. 11 (Pastor Aff.) ¶¶ 1-2, 4, 8. An unspecified number of resumes was received and reviewed "to eliminate unqualified candidates," and from the remaining resumes an unspecified number of candidates was interviewed by the entire staff of the Office of International Affairs. *Id.* ¶ 8. Staff "rated [each candidate] on experience, accuracy, interpersonal skills, fit with office and

professionalism," and met as a group to "discuss[] the strengths and weaknesses of each candidate." *Id.*

Although Mr. Pastor did not recall Plaintiff's resume, he reviewed it in preparing his affidavit.  Pastor Aff. ¶ 7.  Mr. Pastor concluded that Plaintiff would not have been a good fit for the position because the position was primarily administrative, and therefore would not meet the stated objectives set forth in Plaintiff's resume: "the attainment of 'new entry-level positions in writing, editing, education[,] communications, public administration[,] business, or real estate development.'" *Id.* ¶ 7. Further, Plaintiff did not have three to five years' experience as an administrative assistant with experience as a receptionist, qualifications that Defendant preferred in a candidate.  *Id.*

Plaintiff counters that Defendant "refused to count in [Plaintiff's] favor his Master's Degree in International Affairs at Columbia and one year for Vice President for Government Relations when [the] hired applicant had similar phone answering skills as [Plaintiff.]"  Pl.'s Opp'n at 2.  Further, he asserts that he did not lack language skills because "he took French, the preferred language in [the] ad, and [the] hired applicant took Arabic: both were equal in one year of foreign study."  *Id.*

With respect to this Staff Assistant position, Plaintiff does make out a prima facie case.  His resume reflects that he meets the

minimum educational requirements for this entry-level position and suggests that he has administrative support experience. Arguably, Plaintiff has knowledge of French, a skill Defendant preferred in a candidate.

Notwithstanding Plaintiff's apparent qualifications, Defendant met its burden of production. Defendant selected a candidate who not only "received an excellent rating based on the interview criteria" but also had over three years' experience as a staff assistant at another university.[13] Pastor Aff. ¶ 9. In addition, the candidate had lived in Morocco and Egypt and spoke proficient Arabic. *Id.*, Ex. 11 (redacted resume). Defendant presents, "through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507 (emphasis in original).

Plaintiff fails to point to any evidence in the record tending to show that Defendant's proffered explanation is a pretext for age discrimination. As noted earlier, his own assessment of his qualifications and skills does not suffice. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d at 7; *Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (finding no genuine issue of

---

[13]    The selected candidate was 24 years old. AU Mot., Ex. 8.

material fact where plaintiff provided no evidence supporting her own self-serving and conclusory statements allowing the Court to find that a downgraded performance rating was pretext for discrimination), *aff'd sub nom. Hastie v. Potter*, No. 00-5423, 2001 WL 793715 (D.C. Cir. June 28, 2001) (per curiam).  In sum, there is not sufficient evidence from which a reasonable jury could conclude that Defendant failed to select him for this position because of his age.

8.    Administrative Assistant, Washington Semester Program
       (Position #4041)

The Administrative Assistant is "the main and often first point-of-contact with prospective students for all [Washington Semester] programs."  AU Mot., Ex. 18 (Position Questionnaire) at 1.  The Assistant's principal responsibilities include: greeting students and office visitors, answering incoming calls, connecting callers to appropriate University personnel, and acting as a liaison with students via e-mail.  *Id.* at 2.  An Associate's degree is required; a Bachelor's degree is preferred.  *Id.* at 3.  The position requires "superb telephone skills" and "[c]ustomer service and/or receptionist experience is desirable."  *Id.*

Nicole Greene Robinson, the Director of Marketing, Washington Semester Program, initiated the hiring process in October 2004 by having the position posted on the Washington Post's website and the

University staff listserv. AU Mot., Ex. 18 (Robinson Aff.) ¶¶ 1-2, 4, 8. She selected several candidates to interview from an unknown number of resumes received based on their experience with receptionist and customer service duties and knowledge of American University.[14] *Id.* ¶¶ 5, 8.

Ms. Robinson did not recall Plaintiff's resume, but she reviewed it in preparing her affidavit. Robinson Aff. ¶ 7. She concluded that Plaintiff "does not meet the preferred skills for the position because he does not have customer service or receptionist experience." *Id.* In addition, noting that the "objective on [Plaintiff's] resume [is] the attainment of a new entry level position in 'writing, editing, education[,] communications, public administration [,] business or real estate development,'" Ms. Robinson "would have disregarded his resume based on this point alone." *Id.*

Plaintiff counters by claiming that "it was unlawful age discrimination for [Defendant] to hire someone younger with less education [when] a 'bachelor's degree is preferred.'" Pl.'s Opp'n at 3. He argues that he "was also better on years of experience with 'organizational, communication, and computer skills' than [the] hired employee who had less receptionist phone answering

---

[14]    There is no other information in the record about the hiring process for this position.

skills than [Plaintiff]."  *Id.*

The Court concludes that Plaintiff does make out a prima facie case of discrimination.  His resume reflects that he meets the minimum and preferred educational requirements for the position and suggests that he has administrative experience.

Defendant hired a candidate who graduated from high school and had attended Northern Virginia Community College and Montgomery College.[15]  AU Mot., Ex. 18 (Application for Employment) at 1. Previously he had worked as a Medical File Clerk at Children's National Medical Center, *see id.* at 2, and had worked at American University as a Production Assistant and as an Office Assistant with the Washington Semester Program.  Robinson Aff. ¶ 9.  The candidate had "both receptionist experience and specific knowledge of American University and the Washington Semester Program."  *Id.* In addition, the selected applicant's resume specifically included data entry and customer service among his career objectives.  *Id.* These facts demonstrate that Defendant has met its burden of production by presenting legitimate, non-discriminatory reasons for its hiring decision.

Again, the Court notes Plaintiff's failure to point to any evidence in the record tending to show that Defendant's proffered reasons are a pretext for age discrimination.  His own assessment

---

[15]    The selected candidate was 21 years old.  AU Mot., Ex. 8.

of his qualifications and skills cannot be used to establish pretext. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d at 7; *Singleton v. Potter*, 402 F. Supp. 2d 12, 30-31 (D.D.C. 2005).

9. <u>Senior Administrative Clerk (Graduate Advising Assistant), School of International Service (Position #1713)</u>

The Senior Administrative Clerk "support[s] counselors in directing academic operations of the graduate programs of the [School of International Service]." AU Mot., Ex. 26 (Position Questionnaire) at 1. In this capacity, the Clerk "[r]esponds to a wide variety of inquiries on graduate matters from prospective and enrolled students, University staff, alumni, and others." *Id.* A candidate must have a Bachelor's degree; two years of office experience, particularly at a university, is preferred. *Id.* at 2. In addition, a candidate must have strong word processing, interpersonal, and organizational skills, and must be able "to accomplish tasks simultaneously." *Id.*

Joseph Clapper, the Assistant Dean for Budget and Administration of the School of International Service, initiated the hiring process in the Spring of 2005.[16] AU Mot., Ex. 26 (Clapper Aff.) ¶¶ 1-2, 4.

---

[16] Defendant abandoned the search while the department considered a reorganization; it resumed the search in late summer 2005. Clapper Aff. ¶ 8. Mr. Clapper stated that he received 35 resumes for the position, but offered no further details about the search. *See id.* ¶ 8.

Although Mr. Clapper did not recall Plaintiff's resume, he reviewed it in preparing his affidavit.  Clapper Aff. ¶ 7.  He concluded that Plaintiff "does not meet the preferred skills for the position because he does not have administrative support experience."  *Id.*  In addition, Mr. Clapper "would have discarded [Plaintiff's] resume" because of "his objective on his resume."  *Id.*  According to Plaintiff, his objective was "the attainment of a new entry level position in 'writing, editing, editing[,] communications, public administration[,] business or real estate development,'" none of which Mr. Clapper believed could be achieved in this administrative position.  *Id.*

Plaintiff asserts that Defendant "refused to count [his] Master's Degree in International Affairs in his favor when [the] hired employee had equal degree Master's from American U. School of Inte[r]national Service."  Pl.'s Opp'n at 6.  Nor, he asserts, did Defendant consider Plaintiff's "several internships of greater length at Columbia for International Peace Academy, Center for Inter-American Relations, and work on a media conference at Counsel of International and Public Affairs, [his] summer work as a Baruch Fellow at United Nations Association of U.S.A., and History thesis."  *Id.*  Aside from his Master's Degree in History and an Assistant Editor role for a publication of the United Nations Association of the USA, none of these items appears on Plaintiff's

resume.  *See* AU Mot., Ex. 27.

The Court concludes that Plaintiff does make out a prima facie case of discrimination.  His resume reflects that he meets the minimum educational requirements for the position and suggests that he has administrative experience.  Defendant's stated reasons for rejecting Plaintiff's application do not address directly whether Plaintiff met the minimum qualifications for the position. However, it meets its burden of production in proffering legitimate, non-discriminatory reasons for its hiring decision.

Defendant hired a former Peace Corps volunteer with a Master's degree in International Communication from American University's School of International Service and a Bachelor's degree in English Literature and German from Washington University.[17]  AU Mot., Ex. 26 (redacted resume).  Because of his graduate work at American University, the selected candidate was "completely conversant with the operations of the office and the academic programs of the [School of International Service]."  Clapper Aff. ¶ 9.  His work on a "critical partnership project between [the School of International Service] and the International Management Institute to put on a two day conference . . . demonstrated administrative skills that matched the duties needed to perform the job."  *Id.*

---

[17]    The selected candidate for this position was 29 years old.  AU Mot., Ex. 8.

Once again, Plaintiff fails to offer sufficient evidence from which a reasonable jury could conclude that Defendant's explanation was merely a pretext for age discrimination.

### III.    CONCLUSION

Even where Plaintiff arguably is qualified for the positions for which he applied and thus manages to make out a prima facie case of age discrimination, Defendant succeeds in rebutting any inference generated by the prima facie case.  With respect to each of the positions for which he applied, Plaintiff  fails to produce any evidence tending to show that his age made a difference in Defendant's hiring decisions.  Accordingly, the Court will grant summary judgment for Defendant.  An Order consistent with this Memorandum Opinion will be issued separately.


/s/_____
GLADYS KESSLER
United States District Judge

October 15, 2007

41